[No. 6380–8–II. Division Two. July 11, 1984.]

FRIENDS AND LAND OWNERS OPPOSING DEVELOPMENT,
*Appellant*, v. THE DEPARTMENT OF ECOLOGY,
ET AL, *Respondents*.

*Joseph P. Enbody,* for appellant.

*Kenneth O. Eikenberry, Attorney General, Patricia Hickey O'Brien, Assistant, Donald F. Pietig, City Attorney,* and *James M. Healy, Jr.,* for respondents.

WORSWICK, A.C.J.—A nonprofit association of landowners, styling themselves FLOOD after the popular fashion in acronyms, challenges the definition of "floodway" appearing in Centralia's Shoreline Management Master Program. The narrow question before us is whether the trial court erred in dismissing that challenge by summary judgment. We affirm, holding that although FLOOD proceeded properly in court to mount the challenge, it failed to show the existence of any genuine issue of material fact as to the definition's validity.

The Shoreline Management Act of 1971 (RCW 90.58) both enables and requires the adoption of shoreline management master programs by local governments whose boundaries embrace shorelines. RCW 90.58.080(2). "Shorelines" are defined to include all of the water areas of the state, their associated wetlands, and the underlying lands. RCW 90.58.030(2)(d).[1] Thus, shorelines include "wetlands,"

---

[1] RCW 90.58.030(2)(d) provides a complete definition of "shorelines" as follows:

"'Shorelines' means all of the water areas of the state, including reservoirs, and their associated wetlands, together with the lands underlying them; except (i)

86

and wetlands include "floodways." *See* RCW 90.58.030-(2)(f).[2] The act directed the Department of Ecology (DOE) to proceed promptly to promulgate guidelines for the use of affected local governments in regulating shorelines usage. RCW 90.58.060. Ultimately, local governments were expected to submit master programs for shorelines usage to DOE, and DOE was empowered to approve the plans, integrate them into a comprehensive "state master program" (RCW 90.58.030(3)(c)), and then to oversee their administration. *See* RCW 90.58.070–.110. All rules, regulations, guidelines, designations, and master programs, whether issued by DOE or adopted locally and approved by DOE, were to comply with the rulemaking procedures of the administrative procedure act, RCW 34.04.025. *See* RCW 90.58.120.

 The City of Centralia enacted ordinance 1388, establishing its master program, on November 1, 1977. DOE approved Centralia's program on March 29, 1978. WAC 173–19–2901. The ordinance was not challenged at the time of its adoption. Once approved by DOE, it became, in effect, a state regulation as part of the state master program for shorelines management. *See Harvey v. Board of Cy. Comm'rs*, 90 Wn.2d 473, 584 P.2d 391 (1978).

---

shorelines of state–wide significance; (ii) shorelines on segments of streams upstream of a point where the mean annual flow is twenty cubic feet per second or less and the wetlands associated with such upstream segments; and (iii) shorelines on lakes less than twenty acres in size and wetlands associated with such small lakes;"

[2]RCW 90.58.030(2)(f), defining "wetlands," provides:
"'Wetlands' or 'wetland areas' means those lands extending landward for two hundred feet in all directions as measured on a horizontal plane from the ordinary high water mark; floodways and contiguous floodplain areas landward two hundred feet from such floodways; and all marshes, bogs, swamps, and river deltas associated with the streams, lakes, and tidal waters which are subject to the provisions of this chapter; the same to be designated as to location by the department of ecology: *Provided,* That any county or city may determine that portion of a one–hundred–year–flood plain to be included in its master program as long as such portion includes, as a minimum, the floodway and the adjacent land extending landward two hundred feet therefrom;"

About 2½ years later, in late 1980, Joe Dipola acquired property near the Chehalis River, moved two homes onto it, and started to build a third. He obtained the necessary moving and building permits and received assurances from the City of Centralia that the property was outside the shoreline area and, hence, no shoreline permit was required. DOE confirmed this determination and further informed Dipola that no flood control zone permit was required because his property lay outside the Chehalis River Flood Control Zone. Nevertheless, neighbors who were offended by Dipola's use of his property formed a group called Friends and Land Owners Opposing Development (FLOOD) and sued for declaratory judgment and abatement of a nuisance by injunction. The nuisance allegation was later dismissed and is not part of this appeal.

The standard of judicial review, as specified in RCW 90.58.180(5), is pursuant to RCW 34.04.070(2), and provides that the court will declare an agency rule (or ordinance) invalid only if it is unconstitutional, exceeds the agency's authority, or was adopted without compliance with statutory rulemaking procedures.[3] FLOOD does not contend that the ordinance is unconstitutional or was adopted without proper procedures. Therefore, the dispositive issue raised by FLOOD's challenge is whether DOE exceeded its authority by approving a local ordinance that conflicts with RCW 90.58.[4] *See Somer v. Woodhouse*, 28 Wn. App. 262,

---

[3]The standard of reasonableness, ordinarily applied in cases involving acts by local governments, is therefore not applicable here. *See Kennedy v. Seattle*, 94 Wn.2d 376, 617 P.2d 713 (1980); *Lenci v. Seattle*, 63 Wn.2d 664, 388 P.2d 926 (1964); *Spokane v. Bostrom*, 12 Wn. App. 116, 528 P.2d 500 (1974).

[4]Judicial review of administrative rules or local ordinances is generally more informed when the party mounting a challenge can come before the courts having made a record as to the validity of the rule or ordinance at the stage of promulgation or enactment. In fact, a party has no standing to maintain an action for declaratory and injunctive relief on constitutional grounds until it has exhausted administrative remedies and shown that the challenged ordinance will prove harmful. *Ackerley Communications, Inc. v. Seattle*, 92 Wn.2d 905, 908, 602 P.2d 1177 (1979), *cert. denied*, 449 U.S. 804 (1980). In the context of the shoreline management act, however, the Legislature has—unwisely, we believe—authorized

623 P.2d 1164 (1981). By dismissing FLOOD's action, the Superior Court essentially held that FLOOD could not establish factually that DOE had exceeded its authority. We agree with the Superior Court.

We pause first to consider the standard of appellate review—a matter not briefed or argued by the parties but always of paramount concern to us. RCW 90.58 and RCW 34.04 are both silent on this, and the Legislature would be well advised to speak to the subject to avoid difficulties in cases involving more sophisticated issues. However, because the issue here comes down to a straightforward factual question, a ready answer is apparent. Because judicial review in Superior Court was permitted in this case by a declaratory judgment action, we look to RCW 7.24.070, a portion of the Uniform Declaratory Judgments Act, which provides:

> Review. All orders, judgments and decrees under this chapter may be reviewed as other orders, judgments and decrees.

Thus, because of the factual nature of FLOOD's challenge, we are put to the relatively simple task of determining—in the traditional way—whether the factual record before the Superior Court permitted summary judgment of dismissal. We conclude that it did.

Administrative rules (and local ordinances) adopted pursuant to a legislative grant of authority are presumed to be valid and should be upheld on judicial review if they are reasonably consistent with the statute. *Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980), *modified*, 95 Wn.2d 962, 633 P.2d 1324 (1981). A party attacking such a rule or ordi-

---

direct superior court review under the administrative procedure act of rules, regulations, designations, master programs, and guidelines. *See* RCW 90.58.180(5). *Cf. Seattle v. Department of Ecology*, 37 Wn. App. 819, 683 P.2d 244 (1984). Such was the procedure used in this case, and consequently the case comes before us without benefit of any administrative record illuminating the process by which this definition was adopted. *Cf. Somer v. Woodhouse*, 28 Wn. App. 262, 623 P.2d 1164 (1981) (record of agency rulemaking part of appellate record).

nance has the burden of showing compelling reasons why it is in conflict with the legislation. *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314–17, 545 P.2d 5 (1976). In moving for summary judgment, defendants came forth with affidavits showing that the Dipola property was not within a floodway, was not part of the shoreline, and was not subject to the shoreline management act master plan or, for that matter, the state flood control statutes, RCW Title 86. Thus, in order to withstand the motion for summary judgment, FLOOD, as the nonmoving party, had to produce specific facts showing that ordinance 1388, which in effect located the property outside the floodway, was in conflict with the intent and purpose of RCW 90.58. *See Peterick v. State,* 22 Wn. App. 163, 181, 589 P.2d 250 (1977). This was not done.

Ordinance 1388 provided in 1980 that the "floodways" within Centralia's master program were simply to be those "indicated on the U.S. Corps of Army Engineers and U.S. Department of Agriculture Soil Conservation maps on file in the office of the Centralia City Engineer."

"Floodway" is defined in RCW 90.58.030(2)(g) for purposes of shorelines master programs as:

> [t]hose portions of the area of a river valley lying streamward from the outer limits of a watercourse upon which *flood waters are carried during periods of flooding that occur with reasonable regularity,* although not necessarily annually, said *floodway being identified, under normal condition, by changes in surface soil conditions or changes in types or quality of vegetative ground cover condition.* The floodway shall not include those lands that can reasonably be expected to be protected from flood waters by flood control devices maintained by or maintained under license from the federal government, the state, or a political subdivision of the state.

(Italics ours.) FLOOD does not contend that the Dipola property is outside the floodway as designated by Centralia and DOE, and therefore outside the reach of the shorelines master plan. Rather, it contends that the designation of floodway is contrary to the regulations and definitions set

forth in the shoreline management act itself. We disagree.

The statutory definition of floodway provides, first, a geographical designation and second, a method of verifying that designation. To satisfy the geographical designation, the land must lie within an area that is flooded with reasonable regularity. FLOOD presented evidence that the Dipola property had been flooded on three different occasions, in 1971, 1972, and 1975. It established nothing more. It provided no evidence of flooding in other years. It did not show that this property is always flooded when the Chehalis River floods. FLOOD provided no information regarding the extent of past floods on the property. Instead, it relied on the conclusory statements of neighbors that the land lies in a floodway because it has been flooded on occasion. Such statements could not be considered by the trial court in opposition to the motion for summary judgment. *Turngren v. King Cy.*, 33 Wn. App. 78, 649 P.2d 153 (1982). Moreover, reliance on such bare conclusions rather than evidentiary facts suggests that additional, specific evidentiary facts on personal knowledge were not available. FLOOD failed to adduce a sufficient quantum of evidence to imply a regular pattern of flooding, and no inconsistency between RCW 90.58 and Centralia's ordinance on that basis has been shown.

The second part of the definition in RCW 90.58.030(2)(g) refers to a method by which the geographical designation of a floodway may be identified under normal conditions. That method looks to changes in surface soil or vegetation. FLOOD contends the City's means of locating floodways— by reference to the Corps of Engineers and U.S.D.A. maps—is invalid because it differs from the statutory means. However, FLOOD has not shown that the two means are inconsistent in result. It did not present evidence to suggest that the surface soil or vegetation on the Dipola property is the same as soil or vegetation found on floodways marked on the maps. Nor did it show that the soil or vegetation on Dipola's property is notably different from that on property lying farther inland. On the other hand,

one of defendants' experts suggested that such soil and vegetation differences were found much closer to the river than the boundaries of either Dipola's property or the floodway as designated by ordinance 1388. FLOOD did not refute this, nor did it offer any other evidence to indicate that Centralia's designation of the floodways excluded land that the statute intended to include.[5]

Summary judgment was proper and is affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied August 14, 1984.

---

[5]We observe that the method of floodways designation that FLOOD seems to suggest—reliance on the opinions of neighboring landowners—is itself different from the statutory tests, and far less reliable.

It should also be noted that DOE is authorized under RCW 90.58.030(2)(f) to designate wetland areas, which are defined to include floodways. As the agency charged with the administration of this statute, its interpretation should be given great weight. *See English Bay Enters., Ltd. v. Island Cy.*, 89 Wn.2d 16, 568 P.2d 783 (1977); *Weyerhaeuser Co. v. Department of Ecology, supra.*