[No. 7769-8-II.   Division Two.   July 31, 1986.]

LEONISA MAUZY, ET AL, *Appellants*, v. ALAN J. GIBBS,
*as Secretary of the Department of Social
and Health Services, Respondent.*

*Phillip J. Kassel* and *Elizabeth A. Schott* of *Evergreen Legal Services,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Charles F. Murphy* and *Peggy L. Brown, Assistants,* for respondent.

*Marc R. Kittner* on behalf of the American Civil Liberties Union, amicus curiae.

REED, J.—A recipient of Aid to Families With Dependent Children (AFDC) and an organization of welfare recipients brought this action to invalidate two regulatory actions of the Department of Social and Health Services (DSHS): an amendment to existing regulations adopted, without notice or an opportunity for public comment, because of a purported "emergency"; and a very similar amendment later adopted under normal procedure, effective before the expiration of the emergency amendment. They appeal summary judgment granted to DSHS on both issues. We reverse in part and affirm in part.

In 1983 the Legislature directed DSHS to provide a community work and training program for "a minimum of two hundred" Washington recipients of Aid to Families With Dependent Children, beginning "no later than January 1, 1984." Laws of 1983, 1st Ex. Sess., ch. 41, § 41, p. 1707 (effective August 23, 1983, codified at RCW 74.04.473). DSHS was already operating an experimental pilot Community Work Experience Program (CWEP) under the authority of federal regulation. 45 C.F.R. §§ 238.01–.64 (1982) (effective February 5, 1982); State Register 82–11–018 (Order 1807 adding WAC 388–57–097) (May 10, 1982); State Register 83–01–057 (Order 1924 amending WAC 388–57–097) (Dec. 15, 1982).

In what the Department argues was response to the new statute, DSHS published proposed amendments to the existing program regulations. State Register 83–19–025 (Sept. 13, 1983). Under the proposed amendments, the

program would no longer be merely a pilot project, CWEP would no longer be restricted to Spokane and Tacoma, and, apparently, more AFDC recipients would have to participate. The filing indicated that a formal decision regarding adoption, further amendment or repeal of the proposed amendment would take place on November 1, 1983. The appellants do not contend that this notice or subsequent proceedings failed to satisfy the procedural requirements of the administrative procedure act (APA), RCW 34.04.

However, the following day DSHS published in the state register an emergency amendment that was identical to the proposed amendment and that took effect immediately, pursuant to RCW 34.04.030.[1] State Register 83–19–033 (Sept. 14, 1983). The preface to the emergency amendment merely stated, in the language of RCW 34.04.030, that "this order is necessary for the preservation of the public health, safety, or general welfare and that observance of the requirements of notice and opportunity to present views on the proposed action would be contrary to public interest." No further explanation or justification was advanced, although RCW 34.04.030 requires that "[t]he agency's finding and a concise statement of the reasons for its finding shall be incorporated in the emergency rule or amendment as filed".

On September 29, 1983, Leonisa Mauzy, an AFDC recipient in Moses Lake, received written notice from DSHS that she was a CWEP candidate. On October 17, 1983, pur-

---

[1] "If the agency finds that immediate adoption or amendment of a rule is necessary for the preservation of the public health, safety, or general welfare, and that observance of the requirements of notice and opportunity to present views on the proposed action would be contrary to the public interest, the agency may dispense with such requirements and adopt the rule or amendment as an emergency rule or amendment. *The agency's finding and a concise statement of the reasons for its finding shall be incorporated in the emergency rule or amendment as filed with the office of the code reviser* under RCW 34.04.040 and with the rules review committee. An emergency rule or amendment may not remain in effect for longer than ninety days after filing. This section does not relieve any agency from compliance with any law requiring that its permanent rules be approved by designated persons or bodies before they become effective." (Italics ours.) RCW 34.04.030.

suant to RCW 34.04.130(2), she and Northend Welfare Rights Organization (NWRO) filed in Thurston County Superior Court for declaratory and injunctive relief from the application of the emergency amendment that had already been adopted, and from the adoption of the proposed amendment.

The emergency amendment expired no later than December 12, 1983. In the meantime, however, DSHS adopted the proposed regular amendment, changing it only to limit the CWEP program again to only two communities, Moses Lake and Mount Vernon. State Register 83–23–010 (Order 2047) (Nov. 4, 1983) (codified at WAC 388–57–097). Later amendment (*see* WAC 388–57–097(8) (Supp. 1984–1985)) is not relevant to this dispute.

Mauzy and NWRO moved for class certification and for summary judgment. DSHS cross–moved for summary judgment, supporting the motion with internal DSHS documents explaining the policy under which DSHS would declare an "emergency" and adopt a rule immediately under RCW 34.04.030. On the Department's reasoning, an emergency existed if a rule was to implement a new law, if it was to restrain expenses, or if it would result in substantial improvement in services.

The trial court granted class certification to Mauzy and NWRO, but granted summary judgment to DSHS on the grounds that: (1) the necessity to implement the 1983 statute by January 1, 1984, justified the adoption of an emergency amendment, and that therefore the emergency amendment was adopted in substantial compliance with RCW 34.04.030; and (2) even if the emergency amendment was invalid, its invalidity could have no effect on the validity of the regularly adopted amendment. The plaintiffs appeal.

Three issues are before us.[2] First, is the issue as to the

---

[2]The question of the standing of either Mauzy, NWRO, or the class to bring this action was raised at oral argument in this court; however, the State conceded the appellants' standing, and we therefore will not consider the issue further.

validity of the emergency amendment moot? Second, if the issue is not moot, was the emergency amendment adopted without substantial compliance with RCW 34.04.030? Third, if the emergency amendment was adopted in violation of RCW 34.04.030, is the permanent amendment, even though adopted after unchallenged notice and comment procedures, invalid because its predecessor was invalid?

## I

A moot case is one in which a party seeks to determine an abstract question that does not rest upon existing facts or rights. *Hansen v. West Coast Wholesale Drug Co.*, 47 Wn.2d 825, 827, 289 P.2d 718 (1955). Even though mootness was not raised and argued by the parties, we must consider the question because the facts suggest that this is a dispute about abstract rights, not a controversy that will make a difference to the litigants. *Rosling v. Seattle Bldg. & Constr. Trades Coun.*, 62 Wn.2d 905, 907–08, 385 P.2d 29 (1963), *cert. denied*, 376 U.S. 971, 12 L. Ed. 2d 85, 84 S. Ct. 1133 (1964). We will normally not accept jurisdiction to decide such a moot question. *See Hansen v. West Coast Wholesale Drug Co., supra.*

Here, the emergency amendment had the force of law for no longer than the period from September 14 to December 12, 1983, and it was superseded by a regularly adopted amendment. Further, even though Mauzy was referred to CWEP during the period during which the emergency amendment was in effect, there is no evidence that she suffered any prejudice as the result of an attempt by DSHS to require her participation, or, indeed, that DSHS ever followed up on its referral of her. There is no showing that NWRO was ever affected by the emergency amendment. The CWEP program is now administered under the regulation adopted after unchallenged notice and hearing. The validity of the emergency amendment may well be moot and thus a threshold requirement of this appeal not be satisfied.

However, this court may consider an arguably moot

issue if the question presented is of substantial or continuing public interest. "The governing criteria for that determination are whether: (1) the issue presented is of a public or private nature, (2) it is desirable to provide guidance to public officers, and (3) the issue is likely to recur." *Zehring v. Bellevue*, 103 Wn.2d 588, 590, 694 P.2d 638 (1985). The question of the standard of conduct to which an agency should be held under the emergency rulemaking power of RCW 34.04.030 is one of first impression in Washington. By its nature, it is one that will recur, and it may someday arise in litigation in which injunctive relief from a presently effective emergency regulation is sought. We therefore review the case on its merits.

## II

■ A court will declare an agency rule invalid only if it is unconstitutional, exceeds the agency's authority, or was adopted without compliance with statutory rulemaking procedures. RCW 34.04.070(2); *Friends & Land Owners Opposing Dev. v. Department of Ecology*, 38 Wn. App. 84, 87, 684 P.2d 765 (1984). In this case the plaintiffs argue, *inter alia*, that the emergency amendment was adopted without compliance with RCW 34.04.030,[3] in that the agency did not set forth sufficient, specific reasons for its findings. We agree.

■ When an agency must announce its reasons for declaring an emergency that requires protection of the public health or welfare, and attempts to justify dispensing with public notice and comment, the reasons should be

---

[3]RCW 34.04.030 is based on a section of the Model State Administrative Procedure Act.

"If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon fewer than 20 days' notice and states in writing its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt an emergency rule. The rule may be effective for a period of not longer than 120 days [renewable once for a period not exceeding ___ days], but the adoption of an identical rule under subsections (a)(1) and (a)(2) of this Section is not precluded." Model State Administrative Procedure Act § 3(b), 14 U.L.A. 357, 388 (1961).

truly emergent and persuasive to the reviewing court. We think it self–evident that considerations of administrative and fiscal convenience alone cannot satisfy that standard. *See Poschman v. Dumke*, 31 Cal. App. 3d 932, 942, 107 Cal. Rptr. 596, 602 (1973) ("The recitals in the resolution in question may be a sound declaration of policy but do not reflect a crisis situation, emergent or actual . . ."). Therefore, the finding of facts that constitute an "emergency" must be more than mere statements of the motivation for the enactment and must provide an adequate basis for judicial review. *Poschman v. Dumke, supra.*[4] The statement accompanying the emergency regulation here in dispute cannot meet even this standard.

We recognize that regulations adopted pursuant to specific legislative delegation of rulemaking power are presumed valid and will be upheld on review if they are reasonably consistent with the statute being implemented, and that we may not substitute our judgment on the wisdom of the regulation for that of the agency. *Brannan v. Department of Labor & Indus.*, 104 Wn.2d 55, 60, 700 P.2d 1139 (1985). Further, DSHS argues that we should give great weight to an agency's expert interpretation of an ambiguous statute. *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975). Nevertheless,

---

[4]Although our state Supreme Court has not addressed this issue in the context of emergency rule making by a state agency, it has spoken to the analogous issue of emergency legislation. *Mead Sch. Dist. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 140, 145, 530 P.2d 302 (1975).

The [Open Public Meetings] act is intended to guarantee public access to and participation in the activities of their representative agencies. RCW 42.30.010. The decisions of governmental bodies are usually important and the circumstances in which they are made are often pressing. Were we to allow them to escape public scrutiny by the simple expedient of declaring the situations they face emergent, we would subject the act's requirements to the whim of the public officials whose activities it is designed to regulate.

*See State ex rel. Brislawn v. Meath*, 84 Wash. 302, 147 P. 11 (1915); *State ex rel. McLeod v. Reeves*, 22 Wn.2d 672, 157 P.2d 718 (1945); *State ex rel. Kennedy v. Reeves*, 22 Wn.2d 677, 157 P.2d 721 (1945); *State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 380 P.2d 735 (1963). In our view, the same considerations apply equally, if not more so, to agency rulemaking.

DSHS offers us little reason to adopt the facile standard for an "emergency" that it advances. It offers no explanation in what sense "emergency" is so ambiguous as to require us to defer to agency interpretation. Furthermore, we observe that the result for which DSHS argues would effectively insulate any emergency regulation from any judicial review.

The error of DSHS lies in the fact that its published justification for this "emergency" regulation merely parroted the language of RCW 34.04.030 and utterly failed to articulate any credible ground for believing, as required by the statute, (1) that the emergency procedure was necessary for the preservation of the public health, safety, or general welfare, and (2) that observance of the requirements of notice and opportunity to present views would be contrary to the public interest. The emergency regulation was adopted without substantial compliance with RCW 34.04-.030 and was therefore invalid.[5] The trial court therefore erred in granting summary judgment to DSHS on this question.

### III

Mauzy and NWRO urge us, if we find, as we have done, that the emergency regulation is invalid, to find also that the regularly adopted, permanent amendment was invalid. They argue that the capriciousness with which DSHS adopted the emergency amendment must have tainted the regular notice and comment process, demonstrating as it does that the Department was not sincerely open to any public comment on the regulatory course upon which the Department had embarked. This is equivalent to arguing that the emergency amendment and the subsequent proceedings constitute a single regulatory action, the promulgation of an amendment, *followed* by notice and comment

---

[5]We note in passing that the Department met the statute's "deadline" of January 1, 1984, by adoption of the permanent regulation, after notice and hearing, on November 4, 1983. Thus, we do not address whether the statute's built-in deadline—the statute itself carried no emergency clause—could itself constitute an emergency.

to it. On this premise, they refer us to federal courts that construe the federal APA to prevent such a stratagem.

In the federal statute, notice and public procedure on a proposed substantive rule are required in every case—unless there is "good cause" to find that they are "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B) (1982). Under the federal APA, therefore, a regulation may be *permanently* adopted without notice and hearing.

When courts have found that such "good cause" to adopt a permanent rule in this manner did not exist, the agency at fault has then argued that "despite its lack of literal compliance with [pre–promulgation notice and comment requirements] the [agency] satisfied the intent of [those requirements] by accepting post–promulgation comments and keeping an open mind about revisions." *United States Steel Corp. v. United States Envtl. Protec. Agency,* 595 F.2d 207, 214 (5th Cir. 1979). However, the notice and comment requirements of the federal APA were "designed to ensure that affected parties have an opportunity to participate in and influence agency decision making at an early stage, when the agency is more likely to give real consideration to alternative ideas." *United States Steel Corp.,* 595 F.2d at 214. These courts have therefore concluded that such opportunity for comment *after* promulgation must be a violation of the federal APA. *See also New Jersey Dep't of Envtl. Protec. v. United States Envtl. Protec. Agency,* 626 F.2d 1038, 1050 (D.C. Cir. 1980).

The provisions for public participation in and influence in agency decisionmaking would be meaningless if such a procedure were approved. "An agency that wished to dispense with pre–promulgation notice and comment could simply do so, invite post–promulgation comment, and republish the regulation before a reviewing court could act." *United States Steel Corp. v. United States Envtl. Protec. Agency,* 595 F.2d at 215.

We are convinced that the Fifth Circuit accurately assessed the psychological and bureaucratic realities of

*post hoc* comments in rule–making. . . . [W]e have no evidence to rebut the presumption that *post hoc* comment was not contemplated by the [federal] APA and is generally not consonant with it."

(Footnote and citations omitted.) *New Jersey Dep't of Envtl. Protec. v. United States Envtl. Protec. Agency,* 626 F.2d at 1050.

■ We see no such circumvention of Washington's APA. Regardless of the outcome of the notice and opportunity for comment on the proposed permanent amendment, the emergency amendment had no effect beyond 90 days after its promulgation. The notice and opportunity for comment concerned the proposed permanent amendment, not the emergency amendment. The notice and comment was *not* a "post–promulgation" attempt to satisfy a notice and comment requirement, but was the ordinary procedure *before* the promulgation of a permanent rule amendment. The federal authority (which we find entirely persuasive within the scope of the statute that it construes) is irrelevant here and unpersuasive in the construction of the Washington APA. We decline to follow Mauzy and NWRO's invitation to confuse the emergency and permanent amendments, which are unrelated under the statute, and we find that the notice and opportunity for comment on the permanent amendment substantially satisfied the Washington APA, as required by RCW 34.04.025(5).

We observe that if Washington had adopted the entire provision of section 3(b) of the 1961 Model State Administrative Procedure Act, see footnote 3, there could be no question of a "taint" communicated to the permanent rule by the invalid emergency amendment. The adoption of a permanent rule through regular notice and comment is specifically "not precluded." See footnote 3. However, even under the more abbreviated provision of RCW 34.04.030, see footnote 1, the Legislature expresses no intention to require an agency to demonstrate the procedural validity of any emergency rule or amendment that it has chosen to adopt, or pay the price of a presumption of procedural

invalidity of any subsequent permanent rule or amendment. The implication of the Washington statute and of the Model Act is that regular notice and comment on a permanent rule may proceed apace, *without* prejudice from the workings of the emergency rule.[6]

The trial court did not err in granting summary judgment for the State on the question of the validity of the regularly adopted amendment.

## IV

We therefore reverse the summary judgment for DSHS as to the emergency amendment, affirm summary judgment for DSHS as to the regularly adopted amendment, and remand for entry of summary judgment for Mauzy and NWRO on the invalidity of the emergency amendment.

WORSWICK, C.J., and PETRICH, J., concur.

---

[6]We note, in additional support for this conclusion, that the State of Idaho has indicated that the sole link between the emergency rule and the permanent rule is chronology. Under the Idaho statute the emergency rule expires upon the effective date of a permanent rule adopted after notice and hearing, and the Idaho Legislature has not suggested that the invalidity of the first rule in any way hobbles the second. "The rule may be effective for a period of not longer than one hundred twenty (120) days unless during that time the agency provides for regular promulgation, notice, and hearings as required by subsections (a) and (c) of this section." Idaho Code § 67–5203(b) (Supp. 1985).