[No. 15081-2-I. Division One. September 15, 1986.]

CLAM SHACKS OF AMERICA, INC., *Appellant,* v. SKAGIT COUNTY, ET AL, *Respondents.*

*Mark Bennett,* for appellant.

*C. Thomas Moser, Prosecuting Attorney,* and *John Moffat, Chief Civil Deputy; Kenneth O. Eikenberry, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Patricia O'Brien, Assistant,* for respondents.

WEBSTER, J.—The appellant, Clam Shacks of America, Inc., brought a declaratory action in Skagit County Superior Court seeking a determination of whether or not its clam harvesting activity is subject to the provisions of the Shoreline Management Act of 1971 (SMA), RCW 90.58, and the Skagit County Shoreline Master Program (SCSMP) enacted thereunder. Appellant contended that the harvesting activity was not a "development" under the SMA, and was therefore not subject to the act's conditional use permit requirements. The trial court granted respondent Skagit County's motion for summary judgment, holding that the harvesting activity was subject to conditional use permit requirements, irrespective of whether the activity was a "development". We affirm.

Clam Shacks leases approximately 1,500 acres of privately owned mud–flat tidelands in Skagit Bay. In early 1983, Clam Shacks approached Skagit County with a proposal for commercial harvesting of clams with a newly

developed hydraulic clam rake. The rake operates by injecting salt water into the sand to cause a state of liquification, which in turn causes clams to break free and float to the surface. The clams are then collected by hand.

The Skagit County Planning Department determined that the clam harvest rake operation did not constitute "dredging" within the meaning of the SMA and that the only permit Clam Shacks needed was a conditional use permit. Clam Shacks applied for and later received such a permit. The permit was granted subject to nine conditions, including that Clam Shacks not harvest during the winter waterfowl season (October 1 through March 1), that Clam Shacks not harvest clams in certain areas, and that Clam Shacks sponsor a study on the impact of the hydraulic rake on vegetation, wildlife, and water quality.

Clam Shacks began operating one rake on March 1, 1984. Skagit County issued a cease and desist regulatory order on March 7 because the study on which the permit was conditioned was submitted late. Skagit County agreed to lift that order and permit Clam Shacks to begin harvesting based upon further conditions. Finding those conditions had not been complied with, the County issued another cease and desist order on March 30, 1984. Following receipt of the latter order, Clam Shacks filed a petition and application for a writ of mandamus and prohibition, and sought a determination that the clam harvesting activity was not subject to the regulatory requirements of the SMA or the SCSMP. Clam Shacks argued that the specific regulatory controls of the SMA apply only to shoreline activities which fall under the act's definition of "development".

The court held that the harvesting operation constituted "aquaculture" within the meaning of the SCSMP, and therefore required a conditional use permit. The court further ruled that no decision was necessary on the issue of whether the harvesting activity constituted a "development" because the SMA does not require that a project constitute a "development" to be subject to a shoreline conditional use permit. Clam Shacks appeals that holding.

In reviewing a trial court's grant of summary judgment, the reviewing court makes the same inquiry as did the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Accordingly, this court must determine whether there is a genuine issue as to any material fact and whether those facts require upholding the summary judgment as a matter of law. *Tri–State Constr., Inc. v. Columbia Cas. Co./CNA,* 39 Wn. App. 309, 312, 692 P.2d 899 (1984).

The first issue presented is whether or not the SMA authorizes regulation, through conditional use permits, of an activity which does not constitute a "development" under the act.

The SMA establishes a special land use regulatory system for shorelines. The policy of the act, in recognition of the valuable and fragile nature of the state's shorelines, is to

> provide for the management of the shorelines of the state by planning for and fostering all reasonable and appropriate uses. . . . This policy contemplates protecting against adverse effects to the public health, the land and its vegetation and wildlife, and the waters of the state and their aquatic life . . .

RCW 90.58.020.

The Legislature has directed that the statute be "liberally construed to give full effect to the objectives and purposes for which it was enacted." RCW 90.58.900; *Hayes v. Yount,* 87 Wn.2d 280, 289, 552 P.2d 1038 (1976). "Liberal" is often used to signify an interpretation which produces broader coverage or more inclusive application of statutory concepts: "What is called a liberal construction is ordinarily one which makes a statute apply . . . in more situations than would be the case under a strict construction." 2A N. Singer, *Statutory Construction* § 58.02 (4th ed. 1984). An unambiguous statute, however, is not subject to interpretation or construction. *Bavarian Properties, Ltd. v. Ross,* 104 Wn.2d 73, 77, 700 P.2d 1161 (1985). Thus, resolution of this issue depends on whether or not one may

reasonably read the SMA in the expansive manner asserted by the respondents.

The SMA uses two main approaches to shoreline regulation: a planning process and a permitting process. The central element of the planning process is the local master program. The act gives responsibility to local governments to develop the master programs. RCW 90.58.050. The programs, which constitute the use regulations for the area, are to take into account the following elements: economic development, public access, recreation, transportation, land use, conservation, and historical, cultural, scientific, or educational value. Since the programs constitute use regulations for the various shorelines, they then form the basis for the subsequent decisions in the permitting process.

The SMA makes reference to "substantial development" permits, and "conditional use and variance" permits. The "substantial development" permit is the act's main enforcement tool. To obtain such a permit, one seeking to undertake a substantial development on shorelines must first prove that the development would be consistent with the policies of the SMA, Department of Ecology guidelines, and the applicable local master program. RCW 90.58.140. "Development" is defined by the act as

> a use consisting of the construction or exterior alteration of structures; dredging; drilling; dumping; filling; removal of any sand, gravel, or minerals; bulkheading; driving of piling; placing of obstructions; or any project of a permanent or temporary nature which interferes with the normal public use of the surface of the waters overlying lands subject to this chapter at any state of water level.

RCW 90.58.030(3)(d). Subject to certain exceptions, a development is "substantial" if its value exceeds $1,000, or if it would materially interfere with the normal public use of the water or shorelines. Former RCW 90.58.030(3)(e).

Conditional use and variance permits, on the other hand, are designed to relax provisions in the master program to insure that strict implementation of the program does not create hardship or thwart the policy of the SMA. RCW

90.58.100(5). The act requires that each master program contain provisions allowing for such permits. The word "use" is not defined in the act, and there is no specific limitation of conditional use permits to "developments". The SMA itself contains no provisions which necessarily indicate that respondent's interpretation is incorrect and is susceptible of more than one reading.

Because the statute is ambiguous in this regard we look to agency interpretations as an indication of legislative intent. *See Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 400, 573 P.2d 10 (1977). Such rules must be written within the framework and policies of the applicable statute, *Washington Fed'n of State Employees v. Higher Educ. Personnel Bd.,* 87 Wn.2d 823, 557 P.2d 336 (1976), and cannot amend or change legislative enactments, *Juanita Bay Vly. Comm'ty Ass'n v. Kirkland,* 9 Wn. App. 59, 79, 510 P.2d 1140 (1973).

In this instance agency rules provide little guidance. Section 11.04 of the SCSMP provides:

If a conditional use request also requires a substantial development and/or variance permit, they shall be treated as one application.

This section apparently recognizes that not all conditional uses constitute substantial developments. Section 11.02 seems to imply just the opposite. Section 11.02 confers authority upon the county hearing examiner to act upon conditional use permit applications for:

a. Developments which are permitted under these regulations in particular shoreline areas only as conditional uses; or

b. Development for expansion of non–conforming uses and structures on shoreline; or

c. Repair or restoration of a non–conforming use or structure; or

d. Development for a use which may be unnamed and/or not contemplated in this program.

Clam Shacks relies upon *Weyerhaeuser Co. v. King Cy.,* 91 Wn.2d 721, 592 P.2d 1108 (1979) for the proposition that the SMA does not regulate activities which are not devel-

opments. That reliance is misplaced. *Weyerhaeuser* holds that the SMA regulates developments within the shorelines of this state, but does not regulate developments that are *outside* the "shorelines" as defined by the act. Further, *Weyerhaeuser* dealt with a substantial development permit that contained certain conditions, rather than a conditional use permit. The court did not address the question of whether a conditional use permit could be required for an activity that was not a development.

■ Likewise, the SMA does not address the issue. We must therefore construe the statute to provide the greatest protection to the shoreline environment. A given shoreline use, such as public access and recreational activity, may be harmful even though it does not fall within the statutory definition of "development". If Clam Shacks' reading of the statute were adopted, some such harmful activities would not be subject to the act's regulation. The respondent's reading provides more complete shoreline protection. Consequently, we conclude that a conditional use permit may be required for an activity even though it is not a "development". A determination as to whether Clam Shacks' activities constitute a "development" would thus have been immaterial to the outcome of the litigation.

Clam Shacks next alleges the existence of issues of material fact regarding whether the clam harvesting operation constitutes "aquaculture" under the Skagit County Shoreline Master Program. However, Clam Shacks' principal dispute relates to the proper definition of the term "aquaculture". The master program defines aquaculture as follows:

> Aquaculture is the farming or culture of food fish, shellfish, or other aquatic plants and animals in fresh or salt water areas, and may require development such as fish hatcheries, rearing pens and structures, and shellfish rafts, as well as use of natural spawning and rearing areas.

SCSMP § 3.03(A)(8).

Clam Shacks urges a different, more restrictive definition

which would not encompass its activities. The affidavits submitted by Clam Shacks' experts indicate that the term "aquaculture" does not encompass the harvesting of a wild and naturally existing resource, without reseeding or culturing activity.

The meaning of a statutory term is a question of law, *Leschi Imp. Coun. v. State Hwy. Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974), while the question of whether a given activity falls within a statutory definition is a question of fact. *Weyerhaeuser Co. v. King Cy., supra* at 727. The SCSMP, upon adoption and approval by the Department of Ecology pursuant to RCW 90.58.090, became a state regulation. WAC 173-19-370; *Friends & Land Owners Opposing Dev. v. Department of Ecology*, 38 Wn. App. 84, 86, 684 P.2d 765 (1984). The master program definition should therefore control. While there is a dispute as to the intensity and impacts of the clam rake operation, the general nature of the activity is not in dispute. Clam Shacks has presented no evidence indicating that its activities do not fall within the SCSMP definition of "aquaculture". Thus, the record in this regard presented no questions of material fact and posed only a legal question. Summary judgment was therefore proper.

The decision of the trial court is affirmed.

SWANSON and PEKELIS, JJ., concur.

Review granted by Supreme Court January 6, 1987.