[No. 18041-3-II.   Division Two.   June 21, 1996.]

DALE PALMER, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*James E. Dickmeyer*, for appellant.
*Christine O. Gregoire, Attorney General*, and *Cameron G. Comfort, Assistant*, for respondent.

HABERLY, J.* — Dale Palmer appeals the decision of the trial court that he was not exempt from successor tax liability to the Department of Revenue, upon his repossession of collateral pursuant to a security agreement. We reverse and remand.

## FACTS

In July 1986, Robert Kolstad d/b/a/ Top Water Sports (Kolstad) obtained secured financing for his business from Borg-Warner Acceptance Corporation (Borg-Warner). On July 25, 1986, Borg-Warner perfected its security interest in Kolstad's business property, including boats and trailers, by filing a Uniform Commercial Code financing statement with the Department of Licensing. On November 3, 1986, Kolstad and Dale Palmer (Palmer) entered into an agreement, wherein Palmer guaranteed the line of credit from Borg-Warner for inventory financing for Kolstad.

---

*Judge Karlyn Haberly is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

The agreement provided, among other things, that in the event Palmer's guaranty was called on by Borg-Warner, Palmer would have the right to be subrogated to the secured creditor position of Borg-Warner for any of Kolstad's liabilities satisfied by Palmer. On November 13, 1986, Palmer executed a guaranty of Kolstad's debt in favor of Borg-Warner.

The agreement discussed the consideration for Palmer's guaranty. It provided that Palmer would advance to Kolstad 10 percent (10%) of the total purchase price of any boat financed through Borg-Warner. This advancement would meet Borg-Warner's financing requirements. From the purchase price of each boat subsequently sold, Kolstad would repay both Borg-Warner and Palmer. In addition, Kolstad would pay Palmer 12 percent annual interest on the money Palmer advanced, plus a lump sum of either $500, $750, or $1,000, depending upon the type of boat sold. The payments received by Palmer upon the sale of a boat were consideration for his advancement of 10 percent of the total purchase price and the guaranty to Borg-Warner and were not a share of the profit or a return of a beneficial interest. Neither Kolstad nor Palmer, by entering into the agreement, intended to create a partnership interest in Kolstad's business.

In October 1987, Kolstad defaulted on his obligation to Borg-Warner. Borg-Warner called on Palmer to pay Kolstad's debt. After a meeting, Borg-Warner and Palmer agreed that Palmer would pay Borg-Warner approximately $43,000 and that Palmer would receive from Kolstad the inventory consisting of four boats and trailers, in which Borg-Warner had a perfected security interest. Palmer paid Borg-Warner $43,407.72 and assumed the Manufacturer's Statement of Origin (MSO) certificates for the boats. The MSO is the only document of title to the boats prior to a sale to a customer.

Pursuant to the agreement between Kolstad and Palmer, Palmer was subrogated to all of Borg-Warner's rights as a secured creditor. Palmer did not assert any ad-

ditional or different rights, such as claiming a secured interest in other inventory of Kolstad's business. Palmer peacefully repossessed four boats and trailers as a secured party, under the provisions of RCW 62A.9-503.

At the time of Palmer's repossession, Kolstad was quitting business; thus, the transfer of these boats, which comprised Kolstad's entire inventory of boats, was not in the ordinary course of business.

Neither Kolstad nor Palmer notified the Department of Revenue (DOR) of the transfer of the boats. The DOR determined that Palmer owed taxes as a "successor" pursuant to RCW 82.32.140 and as defined in RCW 82.04.180 and WAC 458-20-216, and assessed Palmer's liability at the amount of $10,750. This determination was affirmed by the DOR and Palmer paid the assessment. Palmer instituted this action to obtain a refund of the tax paid.

## DISCUSSION

The trial court determined that the transfer of the inventory of boats to Palmer was a sale or conveyance pursuant to RCW 82.04.180. All other elements of this statute were met and, therefore, Palmer was not exempt from tax liability as a successor.

The business and occupation tax promulgated in chapter 82.04 RCW is extensive and is intended to impose this tax upon virtually all business activities carried on in the State. *See Impecoven v. Department of Revenue*, 120 Wn.2d 357, 363, 841 P.2d 752 (1992). RCW 82.32.140 imposes tax liability on a successor to a business under certain circumstances. This statute provides in part as follows:

> Whenever any taxpayer quits business, or sells out, exchanges, or otherwise disposes of his business or his stock of goods, any tax payable hereunder shall become immediately due and payable, and such taxpayer shall, within ten days thereafter, make a return and pay the tax due; and any person who becomes a successor shall become liable for the full amount of the tax and withhold from the purchase price a sum sufficient to pay any tax due . . . ."

A "successor" to a business, as that term is used in RCW 82.32.140, is defined in RCW 82.04.180 as follows:

> "Successor" means any person to whom a taxpayer quitting, selling out, exchanging, or disposing of a business sells or otherwise conveys, directly or indirectly, in bulk and not in the ordinary course of the taxpayer's business, a major part of the materials, supplies, merchandise, inventory, fixtures, or equipment of the taxpayer. Any person obligated to fulfill the terms of a contract shall be deemed a successor to any contractor defaulting in the performance of any contract as to which such person is a surety or guarantor.

Palmer originally had the status of a subrogee to Borg-Warner's secured creditor rights. When Palmer was called upon to pay Borg-Warner, he assumed all of the rights of a secured creditor with a perfected security interest in the boats and trailers. With regard to successor tax liability, Palmer contends that the Legislature did not intend to include secured creditors, repossessing their collateral, within the definition of a "successor" in RCW 82.04.180.

█ This is a question of statutory construction and, thus, is a question of law which is reviewed de novo. *Shum v. Department of Labor & Indus.*, 63 Wn. App. 405, 407, 819 P.2d 399 (1991); *Clam Shacks of America, Inc. v. Skagit County*, 45 Wn. App. 346, 725 P.2d 459 (1986), *aff'd*, 109 Wn.2d 91, 743 P.2d 265 (1987). RCW 82.04.180 makes no reference to creditors holding perfected security interests. The issue posed is whether the interpretation of the statutory language "sells or otherwise conveys, directly or indirectly" includes a transfer to a secured creditor of inventory in which the creditor holds a security interest. In construing a statute, the court's primary objective is to ascertain and give effect to the intent of the Legislature as expressed in the statute. *Martin v. Meier*, 111 Wn.2d 471, 479, 760 P.2d 925 (1988). Absent ambiguity or a statutory definition, words in a statute should be given their plain and ordinary meaning. *Garrison v. Washington State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976). Here neither party argues the statute is ambiguous.

■ RCW chapter 82 does not define the words "sells" or "conveys." The word "sale" is defined in RCW 82.04.040, in part, as follows:

> "Sale" means any transfer of the ownership of, title to, or possession of property for a valuable consideration and includes any activity classified as a "sale at retail" or "retail sale" under RCW 82.40.050. It includes renting or leasing, conditional sales contracts, leases with option to purchase, and any contract under which possession of the property is given to the purchaser but title is retained by the vendor as security for the payment of the purchase price. . . .

This definition incorporates the plain and ordinary meaning of "sell," which is a transfer or exchange of property, goods, or services to another for money or its equivalent. *See* WEBSTER'S NEW WORLD DICTIONARY (3d ed. 1989).

Palmer's repossession of the boats effected a transfer of the boats, but there was neither valuable consideration given in exchange nor was there a transfer of the title to the property. Palmer already held title to the boats and trailers by his assumption of the MSO when he changed his status from a subrogee of a secured creditor to that of a secured creditor by the payment to Borg-Warner.[1]

■ The only reported Washington case found defining the word "convey" is *Blood v. Sielert*, 38 Wash. 643, 80 P. 799 (1905), in which the court concluded that the word "grant" in a deed substantially complied with the statute that required use of the word "convey." The court referred to the Century Dictionary's definition of "convey" as follows: "In law, to transfer; pass the title by deed, assignment, or otherwise; as, to convey lands to a purchaser by bargain and sale. *Blood*, 38 Wash. at 646. (Emphasis in original.)

In BLACK'S LAW DICTIONARY 333 (6th ed. 1990) the word "convey" is defined as:

> To transfer to another. To pass or transmit the title to prop-

---

[1]Finding of Fact 8, Clerk's Papers, at 174.

erty from one to another. To transfer property or the title to property by deed, bill of sale, or instrument under seal. Used popularly in sense of "assign", "sale", or "transfer."

■ There was no transfer of ownership or title by deed, bill of sale, or instrument under seal or any other document when Palmer repossessed the boats and trailers. As a secured creditor, he already held title to the boats and trailers but did not have possession of his collateral. He assumed the MSO certificates when he paid Borg-Warner the sum of $43,407.72.

Palmer's exercise of his rights as a secured creditor to take possession of his collateral did not constitute either a sale or a conveyance by definition. Because a sale or conveyance did not occur, Palmer was not a successor pursuant to RCW 82.04.180 and is not subject to the assessed tax liability.

The facts of this case differ significantly from those in *Tri-Financial Corp. v. Department of Revenue*, 6 Wn. App. 637, 495 P.2d 690, 65 A.L.R.3d 1174 (1972). In that case, Tri-Financial did much more than repossess the equipment leased to the predecessor company, Master Coaters. Every asset of that company was taken over by Tri-Financial, as well as assignments of leases on various items of equipment and the premise's lease. In contrast here, Palmer repossessed only that equipment in which he had a security interest and did not become subject to successor tax liability.

This holding is also consistent with the provisions of the Uniform Commercial Code. RCW 62A.9-504 authorizes a secured party to dispose of collateral after a default and governs the effect of such a transfer or disposition. RCW 62A.9-504(5) provides that the party (Palmer) subrogated to the rights of a secured party (Borg-Warner), who receives a transfer of that collateral, has the rights and duties of a secured party. This same statute further

provides that "[s]uch a transfer of collateral is not a sale or disposition of the collateral."

## CONCLUSION

Palmer is not a successor pursuant to RCW 82.04.180 and is not liable to the Department of Revenue for taxes following his repossession of the collateral in which he had a security interest. In light of our ruling, the other issues raised on appeal need not be addressed. The judgment of the trial court is reversed and remanded. On remand, judgment should be entered in favor of Palmer, awarding him a refund of the tax paid and prejudgment interest.

HOUGHTON, A.C.J., and FLEISHER, J. Pro Tem., concur.