[No. 20026-1-II.   Division Two.   November 1, 1996.]

ANALYTICAL METHODS, INC., ET AL., *Appellants*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Michael C. Anderson,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Joan M. Marchioro, Assistant,* for respondent.

ARMSTRONG, J. — A federal statute requires some federal agencies to expend a small percentage of their research funds on small businesses that agree to do specified research. The Department of Revenue includes the amounts Washington businesses receive under the program as gross income in calculating Business and Occupation (B & O) taxes. Eleven small businesses that participate in the program challenge the tax on these funds, contending that the amounts received are contributions, donations, or endowments, all of which are exempt by statute from the B & O tax. The businesses also argue that federal legislation preempts the State's tax on the funds. After striking one of the declarations submitted by the businesses, the superior court granted summary judg-

ment in favor of the Department. We hold that the amounts are not contributions, donations or endowments, that the Federal government has not preempted the field, and that the trial court did not err in striking the declaration. We affirm.

## FACTS

The Small Business Innovative Research (SBIR) Program was created by the Small Business Innovation Development Act of 1982, and reenacted in 1992. Pub. L. No. 97-219, 96 Stat. 217 (1982), *reenacted by* Pub. L. No. 102-564, 106 Stat. 4249 (1992) (codified at 15 U.S.C. § 638). Under the SBIR Program, participating federal agencies must expend a percentage of their annual research and development (R&D) budgets on SBIR contracts with qualified small businesses. 15 U.S.C. § 638(f). After the federal agency selects a research topic, small businesses can bid on the project. If selected, the small business enters into a contract with the federal agency and then starts the research. The small business is required to make periodic progress reports to the federal agency. The contracts are awarded in several phases: first, for a feasibility study, then for product development, and finally for commercial marketing. 15 U.S.C. § 638(e)(4)(A)-(C).

SBIR contracts are detailed and incorporate by reference clauses contained in the Federal Acquisition Regulations (FAR) System. Title 48 C.F.R. (1995). This system provides numerous standard clauses for government contracts. For example, NASA's contract with Analytical Methods, one of the participating Washington businesses, contains over 50 FAR clauses, including provisions for state taxes and intellectual property. *E.g.*, Federal, State, and Local Taxes, 48 C.F.R. § 52.229-3 (1991); Patent Rights-Retention by the Contractor (Short Form), 48 C.F.R. § 52.227-11 (1988).

The Washington State Department of Revenue, pursuant to chapter 82.04 RCW, assessed B & O taxes on the

SBIR awards. One of the businesses, Videodiscovery, Inc., appealed its assessment to the Department. The Department concluded the federal awards were not deductible donations or contributions under RCW 82.04.4282. The companies appealed to the Thurston County Superior Court, seeking refunds of B & O taxes paid on SBIR funds from January 1, 1990, to May 12, 1994.

As part of their case, the businesses submitted a declaration from Kenneth Langran. Langran was a NASA research scientist and SBIR Program manager at the National Space Technology Laboratories. Langran's declaration contained three primary conclusions. First, he stated Washington is the only state attempting to impose a gross revenue tax on SBIR funds. Second, he claimed the SBIR Program is like an endowment because it provides seed money for innovative concepts. Third, he asserted that SBIR funds and private investments are of equal value to a recipient because the federal government never exercises its rights to a recipient's data and intellectual property.

The Department moved to strike Langran's declaration because it was (1) argumentative in form, (2) irrelevant, and (3) an attempt to play on the court's sympathies. In addition, the Department argued that Mr. Langran was never qualified as an expert or designated as such in discovery requests. The trial court struck the declaration, then granted summary judgment for the Department.

## ANALYSIS

On review of a summary judgment, we perform the same inquiry as the trial court. *Sherman v. State,* 128 Wn.2d 164, 183, 905 P.2d 355 (1995). Because there are no material facts in dispute, we decide the issues as a matter of law. *E.g., Washington Mut. Sav. Bank v. Department of Revenue,* 77 Wn. App. 669, 673 n.1, 893 P.2d 654

(1995). We will narrowly construe any revenue statute that confers refunds or deductions. *Lacey Nursing Ctr., Inc. v. Department of Revenue,* 128 Wn.2d 40, 49, 905 P.2d 338 (1995). In addition, when examining the B & O tax, we have previously noted that chapter 82.04 RCW "is extensive and is intended to impose this tax upon virtually all business activities carried on in the State." *Palmer v. Department of Revenue,* 82 Wn. App. 367, 371, 917 P.2d 1120 (1996).

■ The businesses claim SBIR Program awards are "contributions," "donations," or "endowments" under RCW 82.04.4282. Because the Department relies solely on the plain language of the statute, we limit our analysis to RCW 82.04.4282. Since the statute does not define the disputed terms, we look to dictionaries. *Dawson v. Daly,* 120 Wn.2d 782, 791, 845 P.2d 995 (1993).

## I
### Contributions, Donations, or Endowments

The businesses claim SBIR Program funds are bona fide contributions, donations, or endowment funds under RCW 82.04.4282. According to the businesses, the dictionary definitions of "contributions," "donations," and "endowments" do not preclude commercial relationships. In addition, quoting *Lakeside Country Day School,* the businesses argue an endowment "is manifestly intended to embrace all permanent funds held as an endowment for the production of revenue." *Lakeside Country Day Sch. v. King County,* 179 Wash. 588, 593, 38 P.2d 264 (1934). Therefore, the SBIR Program funds are like permanent endowment funds that the companies use to invest in technology.

■ We consider first whether the funds are endowments. "Endowment" means "the act or process of bestowing a dower, fund, or permanent provision for support." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 750 (1966). This definition is similar to the one provided in *Lakeside Country Day School*: "a permanent fund, the

earnings of which are devoted to the support of the endowed institution . . . ." *Lakeside,* 179. Wash. at 590-91. We conclude SBIR Program funds are not endowments for two reasons. First, the term is not used in any relevant federal law or contract. Second, the federal agencies do not establish a permanent fund and pay the income to the small businesses. Rather, the agencies are required to allocate a portion of their *annual budgets* to qualifying small businesses. And the annual budgets are not permanent funds; they exist only after Congress periodically appropriates the funds.

The Department also contends SBIR Program funds are not contributions or donations because the federal agency acquires intellectual property rights in exchange for the funds. For example, NASA's contract with Analytical Methods incorporated by reference standard clauses concerning patents and copyrights:

> With respect to any subject invention in which the Contractor retains title, the Federal Government shall have a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the subject invention throughout the world.

48 C.F.R. 52.227-11(b) (1988) (incorporated as FAR 52.227-11).

> For data other than computer software the Contractor grants to the Government, and others acting on its behalf, a paid-up nonexclusive, irrevocable, worldwide license to reproduce, prepare derivative works, distribute copies to the public, and perform publicly and display publicly, by or on behalf of the Government, for all such data. For computer software, the Contractor grants to the Government, and others acting on its behalf, a paid-up, nonexclusive, irrevocable worldwide license for all such computer software to reproduce, prepare derivative works, and perform publicly and display publicly, by or on behalf of the Government.

48 C.F.R. 52.227-20(c) (1988) (incorporated as FAR 52.227-20).

We agree with the Department for three reasons. First, the research topic is selected by the federal agency and the business is obligated by contract to perform the research selected. Second, the business is required to periodically report its progress to the federal agency. Finally, the federal agency receives certain intellectual property rights in return for the funds. "Contribution" means "a sum or thing voluntarily contributed." WEB-STER's THIRD NEW INTERNATIONAL DICTIONARY 496 (1966). "Contribute" means "to give or grant in common with others (as to a common fund or for a common purpose)." WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 496 (1966). "Contribute" also means "to give . . . to a common supply, fund, etc., as for charitable purposes." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987). "Donation" means "the action of making a gratuitous gift or free contribution." WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 672 (1966). These definitions require a gratuitous purpose that is missing from the SBIR Program. *See* Pub. L. No. 97-219, § 2(b), 96 Stat. 217 (1982) (stating a purpose of the SBIR Program is "to use small business to meet Federal research and development needs."); S. Rep. No. 97-194, 97th Cong., 2d Sess. 7 (1982), *reprinted in* 1982 U.S.C.C.A.N. 512, 518 (SBIR will provide "a mechanism . . . through which small businesses can be systematically used to meet Federal research and development needs."). Thus, the agencies cannot reasonably be said to contribute or donate the awards.

## II

### Preemption

The businesses contend federal law preempts the Department from taxing SBIR Program awards. We begin our analysis by strongly presuming against preemption. *Stevedoring Servs. of Am., Inc. v. Eggert,* 129 Wn.2d 17, 24, 914 P.2d 737 (1996).

Preemption may occur (1) by statute, (2) by Congressional occupation of the entire field of regulation, or

(3) by a conflict between federal and state law that makes compliance with both impossible or when state law presents an obstacle to the accomplishment of a federal purpose. *Stevedoring,* 129 Wn.2d at 23. The businesses have chosen the third ground; they argue the B & O tax directly conflicts with 15 U.S.C. § 638.

■ The businesses have not overcome the strong presumption against preemption. The businesses cite no case to support their proposition; they present no facts which show the B & O tax interferes with the SBIR Program. *Department of Labor & Indus. v. Common Carriers, Inc.,* 111 Wn.2d 586, 589, 762 P.2d 348 (1988) ("The possibility of interference does not justify preemption."). The businesses do point to extensive quotations from Senate Report 97-194 and the purposes and findings of the 1982 and 1992 Acts. While the quotations may show Congress desired to provide seed money to small companies, there is no indication Congress intended to exempt SBIR funds from State taxes. Indeed, federal participants recognize that SBIR Program awards are not exempt from state taxes. For example, NASA's contract with Analytical Methods incorporated by reference a FAR which provided: "The contract price includes all applicable Federal, State, and local taxes and duties." 48 C.F.R. § 52.229-3(b) (1991) (incorporated by reference as FAR 52.229-3). "All applicable Federal, State, and local taxes and duties" was defined as "all taxes and duties, in effect on the contract date, that the taxing authority is imposing and collecting on the transactions or property covered by this contract." 48 C.F.R. § 52.229-3(a) (1991).

## III
### Declaration of Kenneth Langran

■ The businesses argue that the trial court erred in striking the declaration of Kenneth Langran. We review a trial court's ruling on a motion to strike for abuse of discretion. *King County Fire Protection Dist. No. 16 v. Housing Auth. of King County,* 123 Wn.2d 819, 826,

872 P.2d 516 (1994). We have reviewed the declaration and conclude, for two reasons, that the trial court did not abuse its discretion. First, the bulk of Langran's declaration dealt with his legal opinion that the SBIR Program was an endowment. This was improper. *Leipham v. Adams,* 77 Wn. App. 827, 836, 894 P.2d 576, *review denied,* 127 Wn.2d 1022 (1995). Second, to the extent Langran offered nonlegal opinions, the declaration failed to establish his qualifications as an expert on endowments or B & O taxes. *See, e.g., Safeco Ins. Co. v. McGrath,* 63 Wn. App. 170, 179, 817 P.2d 861 (1991) (expert testimony lacked adequate foundation), *review denied,* 118 Wn.2d 1010 (1992).

We affirm the summary judgment for the Department.

SEINFELD, C.J., and TURNER, J., concur.