[No. 27242-3-II. Division Two. October 4, 2002.]

PAMELA D. IDAHOSA, *Appellant*, v. KING COUNTY, *Respondent*.

*Gregory M. Miller*, for appellant.

*Norm Maleng, Prosecuting Attorney for King County*, and *Diane H. Taylor, Deputy*, for respondent.

SEINFELD, J. — Pamela Idahosa, a former King County corrections officer, sued King County, asserting racial and disability discrimination claims. The trial court imposed $2,000 in sanctions against Idahosa for her discovery violations and later struck her untimely response to the County's summary judgment motion. The court then granted the County's summary judgment motion. Idahosa appeals each of these orders.[1] Finding no reversible error, we conclude that the trial court properly granted summary judgment to King County and, therefore, we affirm.

## FACTS

In February 1993, Idahosa began working for the King County Department of Adult Detention as a corrections officer in the jail. In August 1993, Idahosa injured her right knee and wrist and her left arm when she fell while walking down a ramp at the jail. She returned to work about a week after the incident.

Over the next three years, Idahosa continued to have medical problems that led to frequent work absences. She missed about four to five days of work a month and beginning in late January 1995, she took six weeks off work for physical therapy.

Notwithstanding a February 1995 medical report indicating that Idahosa's condition was "fixed and stable" and that there was "no restriction upon her vocational or avocational activities," in April 1995, she began a six-month medical leave of absence extending through September 1995.

---

[1] For purposes of clarification, appellate counsel did not represent appellant at the trial court level.

Clerk's Papers (CP) at 432. Shortly after Idahosa returned to work, she took another medical leave of absence until April 1996.

At that time, Idahosa's doctor recommended a gradual return to work and, after an extension of Idahosa's leave of absence to resolve some discrepancies in her medical information, she finally returned to work in June 1996. But when she reported to work with a cane and missed two days of work shortly after her return, the County placed her on administrative leave with pay pending clarification of her medical limitations.

During this review period, Idahosa's doctor advised the County that Idahosa could not perform several of the essential functions of the corrections officer position. The doctor was "very pessimistic re: [Idahosa's] long term function[ing.] I doubt she will ever be able to run after or restrain an inmate, etc." CP at 587.

The County met with Idahosa on October 1, 1996, to discuss her medical situation. At that meeting, Idahosa said she disagreed with her doctor's assessment and she would provide additional medical information to the County. But when County officials and Idahosa met again on October 16, she refused to discuss her condition, said she wanted a union representative present, and stated that she would contact the County later to provide the promised information.

Idahosa never provided the information to the County. Consequently, in November 1996, the County notified her that she would be "separated" from her position as a corrections officer effective December 16, 1996, but that she could still participate in the County's job accommodation/reassignment program. CP at 33.

Apparently, Idahosa did not contact the County again until she received a letter dated May 29, 1998, terminating her employment effective May 31, 1998. The letter stated that the County took this action after Idahosa failed to participate in the job accommodation/reassignment program.

Idahosa is African-American. She based her racial discrimination claims on several incidents involving another corrections officer or officers that occurred in 1993 or 1994 and into early 1995.

In June 1999, Idahosa filed a claim for damages against King County for the County's actions from the date of her on-the-job injury in 1993 until her termination in 1998. *See* RCW 4.96.010(1) (filing claim of damages is a condition precedent to commencing an action for damages against local governmental entity). Then, in October 1999, she filed a complaint against King County in Pierce County Superior Court[2] alleging racial and disability discrimination claims under chapter 51.48 RCW and chapter 49.60 RCW. *See* RCW 4.96.020(4) (no action for damages against local governmental entity may be commenced until 60 days after the claim for damages has been filed with governing body).

In January 2001, the parties submitted a joint motion extending the case schedule deadlines. They agreed to a March 5, 2001, discovery cutoff date and a March 26, 2001, cutoff for hearing all dispositive motions. At the same time, Idahosa's attorney notified King County's counsel that he would be absent from his office and outside the state from February 8 through March 9, 2001. Trial was set for May 14.

On February 2, the trial court heard the County's motion to compel discovery from Idahosa. With both parties' agreement, the court granted the motion, ordering Idahosa to provide discovery by February 6. When she failed to comply with this order, the County moved for sanctions. And on March 2, following a hearing at which Idahosa's counsel appeared telephonically, the court ordered Idahosa to pay $2,000 in sanctions.

Meanwhile, on February 20, King County filed its summary judgment motion and the parties agreed that Idahosa would file her response by March 19 and that the court

---

[2] RCW 36.01.050(1) allows a plaintiff to file an action against a county in that county's superior court "or in the superior court of either of the two nearest judicial districts."

would hear the motion on March 23. But Idahosa did not file her response until March 21, two days after the agreed deadline and only two days before the summary judgment hearing.

At that hearing, the County moved to strike Idahosa's untimely response. The trial court granted the motion and then granted summary judgment to the County. The court subsequently denied Idahosa's motion to reconsider its summary judgment decision.

## DISCUSSION

Idahosa assigns error to the trial court's: (1) striking of her response to King County's summary judgment motion, (2) grant of summary judgment to the County and failure to continue the summary judgment hearing, (3) failure to consider her motion to compel discovery from the County, (4) failure to consider her motion to strike portions of the evidence supporting the County's summary judgment motion, (5) imposition of $2,000 in sanctions against her for her failure to comply with the court's order compelling discovery, and (6) denial of her motion for reconsideration. Idahosa asks this court to impose sanctions against the County in the form of her appellate attorney fees for the County's allegedly late and incomplete discovery responses.

We find no abuse of discretion in the trial court's decision to strike Idahosa's untimely summary judgment response, and we conclude that King County was entitled to summary judgment. We further affirm the trial court's imposition of sanctions against Idahosa and decline her request for attorney fees on appeal.

I. UNTIMELY SUMMARY JUDGMENT RESPONSE

Idahosa asserts that the trial court dismissed her claims because of her discovery violations and/or her failure to comply with the case schedule; she then argues that this dismissal was improper under the local and civil rules governing discovery.

There is no indication that the trial court granted summary judgment as a sanction for Idahosa's discovery violations. Rather, the court struck Idahosa's summary judgment response because it was untimely.

Both CR 56(c) and Pierce County Local Rule (PCLR) 56(c)(3) require the nonmoving party to file its summary judgment response no later than 11 days before the hearing on the motion. PCLR 56(c)(4) also directs that late filings may not be accepted or considered absent a discretionary ruling by the trial court: "Any material offered at a time later than required by this rule, over objection of counsel, may not be accepted or considered by the Court, except upon the discretionary ruling of the Court and consideration of the imposition of appropriate terms." But Idahosa filed her response only two days before the summary judgment hearing. Further, even under the parties' more lenient stipulation, in which the County agreed not to object to the response on tardiness grounds if Idahosa filed it by Monday, March 19, the response was late.

As it is undisputed that Idahosa's response was untimely under any calculation of due dates, the trial court could not consider it under PCLR 56(c)(4) unless it made a discretionary ruling to do so. In deciding not to accept the untimely response, the trial court apparently considered, in part, Idahosa's past failures to timely file materials and to comply with the civil and local court rules.

Additionally, between the agreed due date of her summary judgment response, March 19, through the date of the summary judgment hearing, March 23, Idahosa filed: (1) a motion and declaration to compel discovery and a request for attorney fees, (2) a motion to strike evidence supporting the County's summary judgment motion, (3) a motion to shorten time for a hearing on that motion to strike, (4) a praecipe to substitute an exhibit attached to her response to the County's summary judgment motion, (5) her reply regarding her motion to compel discovery, and (6) her reply regarding her motion to strike and her motion to shorten time. But although Idahosa had the time to prepare these

materials, she chose to wait until less than 48 hours before the summary judgment hearing to file her lengthy summary judgment response.

The trial court has considerable latitude in managing its court schedule to ensure the orderly and expeditious disposition of cases. *Woodhead v. Disc. Waterbeds, Inc.*, 78 Wn. App. 125, 129, 896 P.2d 66 (1995); *Wagner v. McDonald*, 10 Wn. App. 213, 217, 516 P.2d 1051 (1973). Here, given the trial court's observations of Idahosa's dilatory pattern, the lateness and size of the response, and a pending trial date less than two months away, we cannot say that it was an abuse of discretion to refuse to accept the untimely response or to strike it as untimely. *See King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994) (trial court's ruling on motion to strike is reviewed for abuse of discretion); *Analytical Methods, Inc. v. Dep't of Revenue*, 84 Wn. App. 236, 244, 928 P.2d 1123 (1996) (same).

Finally, Idahosa suggests that her tardiness was due to the County's alleged discovery violations and, thus, the trial court erred in failing to consider an option other than striking the response. But she does not develop this argument. Even assuming that the County committed discovery violations and that these violations limited Idahosa's ability to respond to the summary judgment motion, she does not explain why she did not make an earlier motion to compel. Rather, her counsel demonstrated a cavalier attitude towards resolving discovery disputes through proper motions by his February 2 comment to the trial court. When the court suggested that he file a motion to compel if he wanted the court to entertain his discovery complaints, counsel replied, "I did not file a motion. I will if we need to go through that drill." Report of Proceedings (Feb. 2, 2001) at 8-9.

Considering the events in context, we conclude that the trial court acted well within its considerable latitude in striking Idahosa's late summary judgment response.

## II. Motion to Strike

■ Idahosa assigns error to the trial court's failure to consider her motion to strike portions of the evidence supporting the County's summary judgment motion. But she does not present a factual or legal argument in support of this assignment. Thus, we do not consider it. RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

## III. Order Compelling Discovery—March 2 Sanctions

Idahosa also challenges the trial court's March 2, 2001 order, directing her to pay $2,000 in sanctions for failing to comply with the court's earlier order compelling discovery by February 6. Idahosa argues that she could not provide the discovery until the County complied with its allegedly outstanding discovery obligations. She also complains that the trial court refused to listen to her allegations regarding the County's discovery violations.

Idahosa's argument is not persuasive given this record. On February 2, 2001, the trial court held a hearing on the County's motion to compel discovery from Idahosa by February 6. After alleging a number of discovery violations on King County's part, Idahosa's counsel asserted that he had no objection to such an order as long as it was reciprocal. Idahosa's counsel agreed to an order compelling discovery by February 6 because he was leaving town for a month-long vacation a few days after that date.

After the February 6 deadline passed with no discovery response or other communication from Idahosa, the County filed a motion for sanctions against her for violating the trial court's order. On the day of the hearing, Idahosa filed an 80-page response to the County's sanctions motion, alleging that the County's previous inadequate discovery responses prevented her from complying with the trial court's discovery order. Dissatisfied with Idahosa's explanation for her tardiness, the trial court imposed sanctions against her.

■■ As Idahosa agreed to the order requiring her to produce discovery by February 6, but then apparently chose

to ignore that order rather than seek modification, the trial court did not abuse its discretion in imposing sanctions. *See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993) (*Fisons*) (appellate court reviews trial court's decision to impose sanctions for an abuse of discretion); *Rhinehart v. Seattle Times Co.*, 51 Wn. App. 561, 574, 754 P.2d 1243 (1988) ("Absent a manifest abuse of discretion, the appellate court will not overturn the trial court's exercise of its broad discretion under CR 37 to impose sanctions for noncompliance with a discovery order.").

IV. IDAHOSA'S REQUEST FOR SANCTIONS

■ Idahosa asks this court to award her terms and her attorney fees on appeal as sanctions for King County's alleged discovery violations below. Idahosa asserts that she was not required to bring a motion to compel in order to be granted sanctions and that remand is not required to determine if sanctions are appropriate as the evidence consists only of written documents and argument of counsel.

But Idahosa has provided no support for the proposition that an appellate court should impose sanctions for discovery violations below when the trial court *never* considered that request. As the trial court is in the best position to decide on the imposition of sanctions for discovery violations, we review a trial court's decision on that issue for an abuse of discretion. *Fisons*, 122 Wn.2d at 339. It is the trial court's function to make the factual determinations as to whether sanctions are warranted and, if so, the amount of such sanctions. *Fisons*, 122 Wn.2d at 355.

*Fisons*, argued by Idahosa, is not applicable here because, in *Fisons*, the trial court exercised its discretion by considering a request for sanctions. *See* 122 Wn.2d at 336-38. Here, we do not have the benefit of the trial court's factual inquiry. Thus, we decline to award Idahosa her attorney fees on appeal for King County's alleged discovery violations.

Affirmed.

940

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, A.C.J., and HOUGHTON, J., concur.

Review denied at 149 Wn.2d 1011 (2003).