IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| DARLA KECK and RON JOSEPH GRAHAM, husband and wife, and DARLA KECK and RON JOSEPH GRAHAM as parents for the minor child, KELLEN MITCHELL GRAHAM, and KELLEN MITCHELL GRAHAM, individually, | No. 31128-7-III |
| Appellants, | |
| v. | PUBLISHED OPINION |
| CHAD P. COLLINS, DMD, PATRICK C. COLLINS, DDS; COLLINS ORAL & MAXILLOFACIAL SURGERY, P.S., a Washington corporation, and SACRED HEART MEDICAL CENTER, a Washington corporation, | |
| Respondents. | |

BROWN, J.—Darla Keck and Ron Joseph Graham (collectively appellants) appeal the trial court's summary dismissal of their medical negligence suit against Chad P. Collins, DMD, Patrick C. Collins, DDS, and Collins Oral & Maxillofacial Surgery PS (collectively respondents).[1] Appellants contend the trial court erred in:

    (1) concluding their first and second medical expert affidavits lack required specificity on negligent postoperative care,
    (2) striking their third medical expert affidavit as untimely,

---

[1] To avoid confusion, we refer to Chad P. Collins, DMD as "Dr. Chad" and Patrick C. Collins, DDS as "Dr. Patrick."

(3) denying a continuance of the summary judgment hearing on negligent postoperative care,
(4) concluding no genuine issue of material fact exists on negligent referral, and
(5) denying reconsideration of the summary judgment order on negligent postoperative care.

After concluding our standard of review is de novo, we hold the trial court erred in striking the third affidavit. We then hold the trial court erred in denying the continuance, granting summary dismissal, and denying reconsideration. Accordingly, we reverse and remand for further proceedings.

FACTS

On November 26, 2007, Drs. Chad and Patrick performed surgery in Spokane on Ms. Keck, a Missoula resident, to correct her obstructive sleep apnea. The surgery involves cutting the patient's jawbones, advancing them to open breathing space, and stabilizing them with plates and screws while new bone bonds them together by filling the gaps left between them. During the healing process, arch bars help align the patient's bite.

Ms. Keck had her first follow-up visit in Spokane on December 6, 2007. She had green pus oozing from her surgical incision as well as pain and total numbness in her chin. Dr. Patrick said the pus was nothing more than a superficial infection. Thus, Dr. Chad prescribed her clindamycin, an antibiotic. Dr. Chad then consulted Dr. Patrick regarding an x-ray of her chin. While Dr. Chad said he thought a particular shadow in the x-ray might evidence a fracture, Dr. Patrick said the shadow was nothing. Finally, Dr. Patrick dismissed her concerns about discoloration in a tooth, saying the November 26 surgery did not affect that area.

2

Drs. Chad and Patrick made no other attempt to evaluate Ms. Keck's problems. Dr. Chad planned to send letters delegating the task of monitoring Ms. Keck's wound healing to Jeffrey R. Haller, MD (her ear, nose, and throat specialist in Missoula), and delegating the task of monitoring her bite alignment to George M. Olsen, DDS (her general dentist in Missoula). The record does not show that the delegation letters were sent, which may be partly explained by Ms. Keck's need for emergency care two days later, resulting in immediate consultation between Dr. Chad and Dr. Haller. At that time, Ms. Keck visited a Missoula emergency room with an infected, painful, and swollen jaw abscess. The emergency physician consulted Dr. Haller, who consulted Dr. Chad. At Dr. Chad's direction, Dr. Haller removed the abscess, packed the wound, and administered clindamycin intravenously. Dr. Haller referred Ms. Keck back to Dr. Chad for further care.

On December 17, Dr. Olsen noted Ms. Keck had "some major bite issues" and her "[b]ite may not be correct for 6 months or until after ortho[dontics]." Clerk's Papers (CP) at 144. However, at her December 26 follow-up visit in Spokane, Dr. Chad noted she had "excellent" bite alignment. CP at 134, 147. He then removed her arch bars, claiming Dr. Olsen had approved doing so. Dr. Chad instructed Ms. Keck to return to him for further care solely as necessary. On January 22, 2008, Dr. Olsen spoke with Dr. Chad by telephone, expressing concerns about infection, pain, and swelling in Ms. Keck's jaw and relapse in her bite alignment. The next day, Dr. Chad discovered her plates and screws were loose, infection had spread into her bone, and her jaw was not uniting. He again prescribed her clindamycin.

3

On January 24, Dr. Chad surgically removed the loose plates and screws, cleaned the bone infection, and wired her jaw shut. During surgery, he confirmed her plates and screws were "completely loose." CP at 148. Dr. Chad planned to track Ms. Keck's condition on a limited basis in Spokane, rather than refer her to a Missoula ear, nose, and throat specialist; plastic surgeon; or oral surgeon. Three days later, Ms. Keck visited a Missoula emergency room with significant swelling in her jaw. An ear, nose, and throat specialist, Phillip A. Gardner, MD, consulted Dr. Chad. At Dr. Chad's direction, Dr. Gardner administered clindamycin intravenously and consulted an infectious disease specialist, Michael B. Curtis, MD. Dr. Curtis wrote, "Clearly she is failing clindamycin and I would advocate abandoning this drug." CP at 154. Another infectious disease specialist, David Christensen, MD, soon began treating her.

At her February 11 follow-up visit in Spokane, Ms. Keck felt constant pain and said "something is going on" in her jaw. CP at 156. On March 18, Dr. Chad surgically cleaned the bone infection and installed "more stout hardware" in her jaw because it was still not uniting. CP at 136. Dr. Chad continued tracking Ms. Keck's condition on a limited basis in Spokane.

At her June 11 follow-up visit in Spokane, Ms. Keck had severe pain as well as loose bone and hardware that moved with finger manipulation. On July 18, Dr. Chad surgically grafted bone, removed a tooth, and installed new hardware in her jaw. Ms. Keck had her last follow-up visit in Spokane on July 23, 2008. Dr. Chad instructed Ms. Keck to return to him for further care solely as necessary. She instead sought the care of an oral surgeon, Clark Taylor, MD, in Missoula. Dr. Clark surgically installed new

4

hardware. Despite this effort, Ms. Keck still suffers continual "fatigue, acrid taste in her mouth, pain, swelling, nerve sensations in her eye and numbness in her cheek and chin." CP at 282.

Appellants sued respondents for medical negligence, partly alleging their follow-up care fell below the accepted standard of care. In August 2011, appellants disclosed Kasey Li, MD, as a medical expert witness. On December 20, 2011, Dr. Patrick moved for summary judgment, partly arguing no genuine issue of material fact exists because appellants lacked medical expert testimony establishing negligence. In February 2012, Dr. Patrick's counsel re-noted the summary judgment hearing for March 30, 2012 without consulting appellants' counsel, a sole practitioner, regarding his availability.

From March 7 through 20, appellants' counsel was in Ephrata representing plaintiffs in a jury trial on a different medical negligence suit. Because Dr. Chad's counsel was representing a defendant in the Ephrata trial, Ms. Keck argues he knew appellants' counsel had no time to prepare a sufficient response to Dr. Patrick's summary judgment motion. Even so, Dr. Chad joined in Dr. Patrick's summary judgment motion on March 14. Appellants' counsel attempted, through his assistant, to collaborate with Dr. Li during the Ephrata trial.

On March 16, appellants filed a first responsive affidavit from Dr. Li, discussing solely Dr. Chad. Dr. Li opined, "I have identified standard of care violations that resulted in infection and in non-union of Ms. Keck's jaw." CP at 42. On March 22, appellants filed a second responsive affidavit from Dr. Li, discussing both Drs. Chad and Patrick. Dr. Li repeated his first affidavit, saying,

5

I have identified standard of care violations that resulted in infection and in non-union of Ms. Keck's jaw. . . .

. . . .

5. The surgeons performed multiple operations without really addressing the problem of non-union and infection within the standard of care.

6. With regards to referring Ms. Keck for follow up care, the records establish that the surgeons were sending Ms. Keck to a general dentist as opposed to an oral surgeon or even a plastic surgeon or an Ear, Nose, and Throat doctor. Again, this did not meet with the standard of care as the general dentist would not have had sufficient training or knowledge to deal with Ms. Keck's non-union and the developing [bone] infection/osteomyelitis.

CP at 47-48.

In reply, respondents argued Dr. Li's first and second affidavits lacked required specificity on negligent postoperative care. On March 29, 10 days after the deadline and the day before the summary judgment hearing, appellants filed a third responsive affidavit from Dr. Li providing additional, more specific detail regarding his previously stated opinion by outlining the facts surrounding each alleged standard of care violation. Appellants' counsel submitted his affidavit noting Dr. Chad's reply was late and explaining the combined reasons for the delay. Ms. Keck's counsel requested the trial court either forgive the late filing or continue the summary judgment hearing to allow full evaluation of the late filing's contents.

Respondents moved to strike Dr. Li's third affidavit as untimely, arguing the late filing was inexcusable and prejudiced them because they lacked sufficient time to file a reply before the summary judgment hearing. Additionally, Dr. Patrick requested permission to file a reply after the summary judgment hearing if the trial court chose to forgive the late filing.

6

The trial court issued a memorandum opinion granting respondents' motion to strike Dr. Li's third affidavit as untimely, denying appellants' motion to continue the summary judgment hearing, and granting respondents' summary judgment motions on negligent postoperative care. The trial court incorporated its memorandum opinion into its final order. Appellants moved unsuccessfully for reconsideration.

Respondents each moved for summary judgment on negligent referral, arguing no genuine issue of material fact exists because their evidence was undisputed. Dr. Chad said he referred Ms. Keck to Dr. Olsen solely to monitor her bite alignment, something he was qualified to do. Dr. Patrick said he had no duty to Ms. Keck because he was never involved in her postoperative care. Ms. Keck contradicted Dr. Patrick's claimed non-involvement.

The trial court issued another memorandum opinion granting respondents' summary judgment motions on negligent referral. Again, the trial court incorporated its memorandum opinion into its final order. Ms. Keck and Mr. Graham appealed.

## ANALYSIS

### A. Standard of Review

Before reaching the parties' substantive arguments, we must decide what review standard applies. Appellants argue the de novo review standard applies to all trial court rulings made in conjunction with respondents' summary judgment motions. Respondents argue the abuse of discretion review standard applies to the trial court rulings granting respondents' motion to strike and denying appellants' motion for

7

continuance, while the de novo review standard applies solely to the orders granting respondents' summary judgment motions.

We review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Mahoney v. Shinpoch*, 107 Wn.2d 679, 683, 732 P.2d 510 (1987). Summary judgment is proper if the records on file with the trial court show "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). We, like the trial court, construe all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). And, we consider solely evidence and issues the parties called to the trial court's attention. RAP 9.12.

In *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998), our Supreme Court said the de novo review standard applies to "all trial court rulings made in conjunction with a summary judgment motion." Appellants argue "all trial court rulings" literally includes rulings concerning evidence timeliness. Respondents argue "all trial court rulings" contextually means rulings on evidence contents solely. Based on the below analysis, we agree with appellants.

*Folsom* involved a trial court ruling on a motion to strike expert affidavits from consideration on summary judgment because they contained inadmissible legal conclusions invading the jury's province or lacking proper foundation. *Id.* at 662-63. The ruling concerned the admissibility of evidence contents under the evidence rules,

8

not evidence timeliness under the civil rules. *Id.* Two years later, our Supreme Court applied the abuse of discretion review standard to a trial court ruling on a motion to continue the summary judgment hearing. *Pitzer v. Union Bank of Cal.*, 141 Wn.2d 539, 556, 9 P.3d 805 (2000) (citing *Tellevik v. Real Property Known as 31641 West Rutherford Street*, 120 Wn.2d 68, 90, 838 P.2d 111 (1992), without acknowledging *Folsom*). Then, seven years later, our Supreme Court again applied the de novo review standard to a trial court ruling on a motion to strike evidence from consideration on summary judgment because it contained inadmissible legal conclusions. *Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 416, 420-21, 150 P.3d 545 (2007) (citing *Folsom*, 135 Wn.2d 658). And again, the ruling concerned the admissibility of evidence contents under the evidence rules, not evidence timeliness under the civil rules. *Id.*

Meanwhile, this court has consistently applied the de novo review standard to trial court rulings concerning the contents of evidence presented on summary judgment.[2] But this court has inconsistently applied the de novo and abuse of discretion

---

[2] *See, e.g., Kenco Enters. Nw., LLC v. Wiese*, 172 Wn. App. 607, 614-15, 291 P.3d 261 (hearsay), *review denied*, 177 Wn.2d 1011 (2013); *Kellar v. Estate of Kellar*, 172 Wn. App. 562, 576-79, 291 P.3d 906 (2012) (dead man's statute), *review denied*, 178 Wn.2d 1025 (2013); *Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 85-87, 272 P.3d 865 (authentication, hearsay, personal knowledge, speculation), *review denied*, 174 Wn.2d 1016 (2012); *Renfro v. Kaur*, 156 Wn. App. 655, 666, 235 P.3d 800 (2010) (extrinsic, subjective intent); *Ensley v. Mollmann*, 155 Wn. App. 744, 751-55, 230 P.3d 599 (2010) (hearsay); *Lane v. Harborview Med. Ctr.*, 154 Wn. App. 279, 286-88, 227 P.3d 297 (2010) (competence, relevance); *Ross v. Bennett*, 148 Wn. App. 40, 45, 48-49, 203 P.3d 383 (2008) (extrinsic, subjective intent, context of formation, authentication, legal conclusion, relevance, undue prejudice, hearsay); *Momah v. Bharti*, 144 Wn. App. 731, 749-52, 182 P.3d 455 (2008) (hearsay); *Cotton v. Kronenberg*, 111 Wn. App. 258, 264, 266-67, 44 P.3d 878 (2002) (legal conclusion).

review standards to trial court rulings concerning the timeliness of evidence presented on summary judgment. The majority of judicial opinions applied the abuse of discretion review standard without acknowledging *Folsom* in this context.[3] However, two judicial opinions followed *Folsom* in this context. *See Southwick v. Seattle Police Officer John Doe No. 1*, 145 Wn. App. 292, 297, 301-02, 186 P.3d 1089 (2008) (reviewing de novo a ruling striking untimely evidence filed *before* the summary judgment hearing (citing *Folsom*, 135 Wn.2d at 663)); *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 490-91, 494, 499-500, 183 P.3d 283 (2008) (reviewing for abuse of discretion a ruling striking

---

[3] *See, e.g.*, *Colo. Structures, Inc. v. Blue Mountain Plaza, LLC*, 159 Wn. App. 654, 660, 246 P.3d 835 (2011) (reviewing for abuse of discretion a ruling on untimely evidence filed before the summary judgment hearing (overlooking *Folsom* and citing *O'Neill v. Farmers Ins. Co. of Wash.*, 124 Wn. App. 516, 521, 125 P.3d 134 (2004) (similarly overlooking *Folsom*)); *Garza v. McCain Foods, Inc.*, 124 Wn. App. 908, 917-18, 103 P.3d 848 (2004) (reviewing for abuse of discretion a ruling on untimely evidence filed before the summary judgment hearing (overlooking *Folsom* and citing *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 744, 87 P.3d 774 (2004) (similarly overlooking *Folsom*))); *O'Neill*, 124 Wn. App. at 521-22 (reviewing for abuse of discretion a ruling on untimely evidence filed before the summary judgment hearing (overlooking *Folsom* and citing *Brown v. Peoples Mortg. Co.*, 48 Wn. App. 554, 558-60, 739 P.2d 1188 (1987) (decided before *Folsom*))); *Idahosa v. King County*, 113 Wn. App. 930, 935-37, 55 P.3d 657 (2002) (reviewing for abuse of discretion a ruling on an untimely response filed before the summary judgment hearing (overlooking *Folsom* and citing a former local rule providing untimely materials were, by default, unavailable to the trial court for consideration on summary judgment unless the trial court made a contrary discretionary ruling)); *Colwell v. Holy Family Hosp.*, 104 Wn. App. 606, 610, 613-14, 15 P.3d 210 (2001) (reviewing for abuse of discretion a ruling on untimely evidence filed after the summary judgment hearing (overlooking *Folsom* and citing *Cox v. Spangler*, 141 Wn.2d 431, 439, 5 P.3d 1265 (2000) (considering evidence admissibility outside the summary judgment context))); *Sec. State Bank v. Burk*, 100 Wn. App. 94, 102-03, 995 P.2d 1272 (2000) (reviewing for abuse of discretion a ruling on untimely evidence filed before the summary judgment hearing (overlooking *Folsom* and citing *Brown*, 48 Wn. App. at 559 (decided before *Folsom*))); *McBride v. Walla Walla County*, 95 Wn. App. 33, 36-37, 975 P.2d 1029 (1999) (reviewing for abuse of discretion a ruling on untimely evidence filed before the summary judgment hearing (overlooking *Folsom* and citing no authority)).

10

untimely evidence filed *after* the summary judgment hearing (citing *Folsom*, 135 Wn.2d at 663, regarding a different issue)). The review standard apparently depended on whether the untimely evidence was filed with the trial court before or after the summary judgment hearing.

Under *Folsom*, an appellate court cannot properly review a summary judgment order de novo without independently "examin[ing] *all* the evidence presented to the trial court" on summary judgment. 135 Wn.2d at 663. Division One of this court followed *Folsom's* precedential reasoning. *See Southwick*, 145 Wn. App. at 297, 301-02. Thus, we agree with appellants and conclude that under *Folsom*, an appellate court cannot fully engage in the same inquiry as the trial court, or construe all evidence and reasonable inferences in the light most favorable to the nonmoving party, unless the appellate court evaluates anew all evidence available to the trial court for potential consideration on summary judgment.

Regarding availability, the determining factor is whether the evidence was "on file" with the trial court, CR 56(c), and "called to the attention of the trial court" on summary judgment, RAP 9.12; *see Colwell*, 104 Wn. App. at 615 (citing *Mithoug v. Apollo Radio of Spokane*, 128 Wn.2d 460, 462, 909 P.2d 291 (1996)). If it was, like here, we review de novo the trial court ruling striking the evidence from consideration on summary judgment. *See Folsom*, 135 Wn.2d at 663. While Dr. Li's third affidavit was untimely under CR 56(c), the clerk accepted the filing. *See* CR 5(e). Under these circumstances, the evidence was available to the trial court for potential consideration

11

on summary judgment.[4] Striking the evidence does not change our conclusion that the third affidavit was "on file" with the trial court, CR 56(c), and "called to the attention of the trial court" on summary judgment, RAP 9.12; *see Cameron v. Murray*, 151 Wn. App. 646, 658, 214 P.3d 150 (2009) ("[M]aterials submitted to the trial court in connection with a motion for summary judgment cannot actually be stricken from consideration as is true of evidence that is removed from consideration by a jury; they remain in the record to be considered on appeal."); *accord Ensley*, 155 Wn. App. at 751 n.7.

Therefore, *Folsom*'s reasoning extends to the trial court's motion-to-strike ruling as well as its summary judgment orders. But considering other directly controlling authority, *Folsom*'s reasoning does not extend to the trial court's motion-for-continuance ruling discussed below. *See Pitzer*, 141 Wn.2d at 556 (citing *Tellevik*, 120 Wn.2d at 90) (reviewing for abuse of discretion a ruling on a motion to continue the summary judgment hearing); *see also State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) (citing *Godefroy v. Reilly*, 146 Wash. 257, 259, 262 P. 639 (1928)) (stating our Supreme Court's pronouncement of state law binds all lower courts until overruled).

In sum, we review the trial court's motion-to-strike ruling de novo, *see Folsom*, 135 Wn.2d at 663; *Davis*, 159 Wn.2d at 416, 420-21, review its motion-for-continuance ruling for abuse of discretion, *see Pitzer*, 141 Wn.2d at 556 (citing *Tellevik*, 120 Wn.2d at 90), and review its summary judgment orders de novo, *see Highline*, 87 Wn.2d at 15; *Mahoney*, 107 Wn.2d at 683.

---

[4] Spokane County Local Rules do not change this presumption because they do not provide otherwise. *Contra Idahosa*, 113 Wn. App. at 935-37 (quoting former Pierce

### B. Ruling to Strike Third Affidavit

The issue is whether the trial court erred in granting respondents' motion to strike Dr. Li's third affidavit as untimely. In light of our standard-of-review discussion, we choose to consider Dr. Li's third affidavit in reviewing the summary judgment order de novo. *See Southwick*, 145 Wn. App. at 297, 301.

The civil rules set a specific timeline for summary judgment procedure. The nonmoving party must "file and serve opposing affidavits . . . not later than 11 calendar days before the hearing." CR 56(c). But the trial court "may permit affidavits to be supplemented or opposed by . . . further affidavits." CR 56(e). Thus, "Until a formal order granting or denying the motion for summary judgment is entered, a party may file affidavits to assist the court in determining the existence of an issue of material fact."[5] *Cofer v. Pierce County*, 8 Wn. App. 258, 261, 505 P.2d 476 (1973) (citing *Felsman v. Kessler*, 2 Wn. App. 493, 498, 468 P.2d 691 (1970)).

Upon motion, the trial court may strike a late filing "unless good cause is shown for, or justice requires, the granting of an extension of time." CR 5(d)(2). Alternatively, upon motion, the trial court may forgive a late filing "for cause shown . . . where the

---

County Local Civil Rule 56(c)(3)); *Brown*, 48 Wn. App. at 559 & n.1 (quoting former King County Local Civil Rule 56(c)(1)(B)).

[5] Respondents dispute this basic principle, citing judicial opinions stating evidence is not newly discovered, within the meaning of CR 59(a)(4) and CR 60(b)(3), if it was reasonably available before the opportunity to present it to the trial court passed. *See Wagner Dev., Inc. v. Fid. & Deposit Co. of Md.*, 95 Wn. App. 896, 907, 977 P.2d 639 (1999); *Adams v. W. Host, Inc.*, 55 Wn. App. 601, 608, 779 P.2d 281 (1989). Those judicial opinions are irrelevant to respondents' motion to strike, which involves CR 5(d)(2) and CR 6(b)(2).

failure to act was the result of excusable neglect." CR 6(b)(2).[6] These considerations

are essential to fulfilling the civil rules' purpose of ensuring the trial court justly, speedily,

and inexpensively determines every action, preferably on the merits rather than

technicalities. *See* CR 1, 56(c), (e)-(f); *Hessler Constr. Co. v. Looney*, 52 Wn. App. 110,

112, 757 P.2d 988 (1988) (citing *Rinke v. Johns-Manville Corp.*, 47 Wn. App. 222, 227,

734 P.2d 533 (1987)); *Fox v. Sackman*, 22 Wn. App. 707, 709, 591 P.2d 855 (1979).

Eight factors assist us in determining whether a delay resulted from excusable

neglect:

> (1) The prejudice to the opponent; (2) the length of the delay and its potential impact on the course of judicial proceedings; (3) the cause for the delay, and whether those causes were within the reasonable control of the moving party; (4) the moving party's good faith; (5) whether the omission reflected professional incompetence, such as an ignorance of the procedural rules; (6) whether the omission reflected an easily manufactured excuse that the court could not verify; (7) whether the moving party had failed to provide for a consequence that was readily foreseeable; and (8) whether the omission constituted a complete lack of diligence.

---

[6] Though appellants did not cite CR 6(b)(2) to the trial court, they nonetheless invoked this rule by stating the reasons for the delay and formally "request[ing] . . . this Court permit the supplemental filing of Dr. Li's [third] affidavit in response to the current Motion for Summary Judgment." CP at 76. Appellants invoked this rule by thoroughly briefing excusable neglect in their motion for reconsideration. *See Nail v. Consol. Res. Health Care Fund* I, 155 Wn. App. 227, 232, 229 P.3d 885 (2010) ("[N]ew issues may be raised for the first time in a motion for reconsideration, thereby preserving them for review, where . . . they are not dependent upon new facts and are closely related to and part of the original theory."). And, respondents' motion to strike necessarily implicates both CR 5(d)(2) and CR 6(b)(2) because these rules are inextricably intertwined in the trial court's decision on whether to consider or not consider Dr. Li's third affidavit on summary judgment.

15 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE § 48:9, at 346 (2d ed.

2009) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380,

113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)).

Appellants filed Dr. Li's third affidavit 10 days after the deadline and the day

before the summary judgment hearing. Respondents lacked sufficient time to file a

reply before the summary judgment hearing. But with the trial date still three and one-

half months away and the dispositive motions deadline still three months away,

respondents would suffer no prejudice by a short delay for them to respond to the third

affidavit and for the trial court to consider all relevant materials, with or without further

argument.

Appellants' counsel swore "the delay . . . was due to Defendants' arbitrarily

selecting a summary judgment date during which Plaintiffs' counsel was unavailable to

*adequately work with* Plaintiffs' expert Dr. Kasey Li." CP at 76 (emphasis added).

Appellants' counsel elaborated,

> 2. Defendant Patrick Collins filed his Motion for Summary Judgment
> without seeking the availability of Plaintiffs' counsel.
> 3. During the time that Plaintiffs' counsel's response was due to
> Defendants' Motion for Summary Judgment, Plaintiffs' counsel was in
> another medical malpractice trial in Ephrata, Washington. That trial began
> March 7, 2012 with the jury rendering its verdict in favor of the Plaintiff on
> March 20, 2012. Dr. Chad Collins' attorney . . . was in the Ephrata trial
> and thus, was aware that Plaintiffs' counsel was unavailable to provide a
> response to Defendants' Motion for Summary Judgment.
> 4. Nonetheless, even though trial was ongoing Plaintiffs' counsel
> *attempted to work with* Plaintiffs' expert Dr. Kasey Li in obtaining an
> affidavit in response to Defendants' Motion for Summary Judgment.[7]

---

[7] Respondents do not dispute these facts. Instead, they argue appellants had
over three months to file a summary judgment response and over a year to obtain Dr.
Li's medical expert opinion. But under respondents' stipulated continuance, appellants

15

CP at 75-76 (emphasis added).

Appellants' counsel acted in good faith when obtaining Dr. Li's first and second affidavits before the deadline, even though appellants' counsel lacked the time and attention needed to ensure the affidavits provided enough specificity to show a genuine issue of material fact exists on negligence. Although appellants' counsel believed the affidavits supplied sufficient facts, he ultimately needed Dr. Li's third affidavit to substantiate his previously stated opinions with more specific facts. The third affidavit stated no new opinions. We accept that the demands of the Ephrata trial were outside the reasonable control of appellants' counsel. And, the delay in filing the third affidavit reflects no professional incompetence or complete lack of diligence by appellants' counsel. Appellants' counsel gave verifiable, not easily manufactured reasons for the delay. The situation was not readily foreseeable because (1) respondents' counsel did not coordinate the summary judgment hearing with appellants' counsel, even though Dr. Chad's counsel was in trial with appellants' counsel, and (2) once appellants' counsel obtained Dr. Li's first and second affidavits, he had a reasonably debatable legal reason for thinking they were sufficient to defeat respondents' summary judgment motion, an argument he vigorously maintains on appeal.

Appellants' counsel called to the trial court's attention that Dr. Li's third affidavit provides enough specificity to show a genuine issue of material fact exists on

---

had no obligation to file affidavits until March 19, 2012. *See Cofer*, 8 Wn. App. at 261. Respondents unduly emphasize that appellants' counsel managed to obtain Dr. Li's first and second affidavits before the deadline. But we reason appellants' counsel, acting in

negligence. In a seminal case, our Supreme Court held, "We feel impelled to set aside the summary judgment, lest there be evidence available that will support the plaintiff's allegations." *Preston v. Duncan*, 55 Wn.2d 678, 683, 349 P.2d 605 (1960). After all,

> "Summary judgment procedure . . . is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury *if they really have evidence which they will offer on a trial*, it is to carefully test this out, in advance of trial *by inquiring and determining whether such evidence exists*."

*Id.* (quoting *Whitaker v. Coleman*, 115 F.2d 305, 307 (5th Cir. 1940)); *see also Barber*, 81 Wn.2d at 144 ("The object and function of summary judgment procedure is to avoid a useless trial. A trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact."); *Babcock v. State*, 116 Wn.2d 596, 599, 809 P.2d 143 (1991) ("Summary judgment exists to examine the sufficiency of legal claims and narrow issues, not as an unfair substitute for trial.").

Considering all, we conclude appellants have justly shown good cause for a time extension to file Dr. Li's third affidavit. The delay resulted from excusable neglect. *See* CR 5(d)(2), 6(b)(2). Therefore, we reverse the trial court's motion-to-strike ruling.

## C. Continuance Ruling

The issue is whether the trial court erred in denying appellants' motion to continue the summary judgment hearing. Appellants contend the trial court had a duty to grant a continuance because they met all necessary criteria.

If, by affidavit, the nonmoving party states reasons why he or she cannot currently present evidence opposing summary judgment, the trial court "may order a

_____

good faith, lacked the time and attention needed to ensure the affidavits provided

continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." CR 56(f). The trial court may deny the motion for continuance solely if "'(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'"[8] *Tellevik*, 120 Wn.2d at 90 (quoting *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)). This court previously explained,

> [W]hen a trial court has been shown a good reason why an affidavit of a material witness cannot be obtained in time for a summary judgment proceeding the court has a duty to accord the parties a reasonable opportunity to make their record complete before ruling on a motion for a summary judgment, especially where the continuance of the motion would not result in a further delay of the trial.

*Cofer*, 8 Wn. App. at 262-63; *see also Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

The trial court must make justice its primary consideration in ruling on a motion for continuance, even an informal one. *Coggle*, 56 Wn. App. at 508; *Butler v. Joy*, 116 Wn. App. 291, 299, 65 P.3d 671 (2003). And "it is hard to see 'how justice is served by a draconian application of time limitations' when [the nonmoving] party is hobbled by

---

enough specificity to show a genuine issue of material fact exists on negligence.

[8] A trial court abuses its discretion if its decision is "manifestly unreasonable," based on "untenable grounds," or made for "untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *see also In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997) ("A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the

18

legal representation that has had no time to prepare a [sufficient] response to a motion that cuts off any decision on the true merits of a case." *Butler*, 116 Wn. App. at 300 (quoting *Coggle*, 56 Wn. App. at 508). Absent prejudice to the moving party, the trial court should grant a motion for continuance under such circumstances. *Id.* at 299-300.

Here, justice required continuing the summary judgment hearing to allow full consideration of Dr. Li's third affidavit. As noted above, appellants were hobbled by counsel who, due to extenuating circumstances, lacked the time and attention needed to ensure Dr. Li's first and second affidavits provided enough specificity to show a genuine issue of material fact exists on negligence. Appellants' counsel needed to file Dr. Li's third affidavit to substantiate his previously stated opinions. But the third affidavit stated no new opinions. With the trial date still three and one-half months away and the dispositive motions deadline still three months away, respondents would suffer no prejudice if the trial court continued the summary judgment hearing and considered the third affidavit.

The trial court denied a continuance after deciding appellants' counsel did not offer a good enough reason for the delay in filing Dr. Li's third affidavit or state what evidence a continuance would yield. The trial court's decision to deny a continuance or enlarge the time for filing was manifestly unreasonable, considering the unrefuted reasons given by appellants' counsel. Considering the strength of the factors outlined above, we conclude it was outside the range of acceptable choices for the trial court to say those reasons were not good enough. A continuance would have allowed the trial

---

record; it is based on untenable reasons if it is based on an incorrect standard or the

19

court to fully evaluate the third affidavit and given respondents time to respond to the specific facts raising a genuine issue of material fact on negligence. Denying a continuance under these circumstances would untenably elevate deadlines over justice and technicalities over the merits, and thus, deny appellants an opportunity to try their case to a jury. Therefore, we conclude the trial court abused its discretion and erred in denying appellants' motion to continue the summary judgment hearing.

### D. Summary Judgment

The issue is whether the trial court erred in granting respondents' summary judgment motions on negligent postoperative care and negligent referral. Appellants argue genuine issues of material fact exist on negligence. We agree.

Summary judgment is proper if the records on file with the trial court show "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). A genuine issue is one upon which reasonable people may disagree; a material fact is one controlling the litigation's outcome. *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974); *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

Initially, the moving party bears the burden of proving no genuine issue of material fact exists. *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). A defendant may meet this burden by showing the plaintiff lacks evidence supporting his or her case. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265

---

facts do not meet the requirements of the correct standard.").

(1986)). Then, the burden shifts and the plaintiff must present admissible evidence showing a genuine issue of material fact exists. *Id.* at 225; *see* CR 56(e). The plaintiff "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." CR 56(e); *see also Young*, 112 Wn.2d at 225-26. Summary judgment is required if the plaintiff "fails to make a showing sufficient to establish . . . an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Young*, 112 Wn.2d at 225 (quoting *Celotex Corp.*, 477 U.S. at 322).

In an action for injury resulting from health care, the plaintiff must usually present medical expert testimony to prove the defendant was negligent. *See Harris v. Robert C. Groth, MD, Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983); *see also* RCW 7.70.040(1) (stating a health care provider is negligent if he or she "fail[s] to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances"). In *Guile v. Ballard Community Hospital*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993), Division One explained when the burden shifts and the plaintiff files medical expert affidavits opposing summary judgment, those affidavits must set forth "specific facts establishing a cause of action," not "conclusory statements without adequate factual support."

Appellants invite us to overrule *Guile*, arguing it is incorrect and harmful because it reads CR 56(e)'s specific facts requirement too restrictively,[9] demands more specificity on summary judgment than ER 704 and 705 would demand at trial,[10] contradicts or lacks support from other judicial opinions, and generally undermines summary judgment's purpose. We decline appellants' invitation because *Guile* is well established as a correct and helpful interpretation of CR 56(e)'s specific facts requirement. *See, e.g., Stewart-Graves v. Vaughn*, 162 Wn.2d 115, 138, 170 P.3d 1151 (2007) (citing *Guile*, 70 Wn. App. at 25, with approval); *Green v. Am. Pharm. Co.*, 136 Wn.2d 87, 98 n.5, 960 P.2d 912 (1998) (same); *Davies*, 144 Wn. App. at 493, 496 (same); *see also Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 787, 819 P.2d 370 (1991); *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 49 Wn. App. 130, 134-35, 741 P.2d 584 (1987), *aff'd*, 110 Wn.2d 912, 757 P.2d 507 (1988).

Unlike the trial court, we reason at the outset that the so-called "negligent referral" claim is inseparable from appellants' general claim of negligent postoperative care. Appellants' complaint states a single medical negligence cause of action. Whether referrals were required or not, made or not, or were adequate or not, are factual issues bearing on whether respondents' follow-up care fell below the accepted

---

[9] *See* CR 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.").

[10] *See* ER 704 ("Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."); ER 705 ("The expert may testify in terms of opinion or inference and

22

standard of care. The parties genuinely dispute all these factual issues. And, Ms. Keck asserts Dr. Patrick was involved in her postoperative care, while he denies it. Considering the record, these factual issues are all debatable and best left for trial as part of appellants' general claim of negligent postoperative care.

As to negligent postoperative care, respondents met their initial burden of proving no genuine issue of material fact exists by showing appellants lacked medical expert testimony establishing negligence. Thus, the burden shifted and appellants had to present medical expert testimony showing a genuine issue of material fact exists by setting forth specific facts establishing negligence. Dr. Li's first and second affidavits lack required specificity because they do not state what facts support his opinion that respondents' postoperative care fell below the accepted standard of care. But Dr. Li's third affidavit provides this specificity by stating Ms. Keck's medical records show:

- During and after her December 6, 2007 follow-up visit, respondents made no appreciable attempt to evaluate the green pus oozing from Ms. Keck's surgical incision or the pain and total numbness in her chin.
- Following Dr. Olsen's January 22, 2008 telephone call expressing concerns about infection, pain, and swelling in Ms. Keck's jaw and relapse in her bite alignment, respondents did not closely track Ms. Keck's condition in Spokane or refer her to a Missoula ear, nose, and throat specialist; plastic surgeon; or oral surgeon.
- Respondents allowed further instability in Ms. Keck's jaw by removing but not replacing loose plates and screws during her January 24, 2008 surgery.
- Though respondents knew Ms. Keck continued suffering nonunion, infection, and pain in her jaw, they did not address these problems during or after her surgeries of January 24, 2008, March 18, 2008, June 11, 2008, or July 18, 2008. The accepted standard of care required respondents to either closely track Ms. Keck's condition in Spokane or else refer her to a Missoula ear, nose, and throat specialist; plastic surgeon; or oral surgeon. But respondents did neither.

give reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise.").

- Respondents' negligence proximately caused Ms. Keck's ongoing problems because her jaw probably would have healed properly if, shortly after her initial November 26, 2007 surgery, respondents had either closely tracked her condition in Spokane or else referred her to a Missoula ear, nose, and throat specialist; plastic surgeon; or oral surgeon.

Dr. Li's third affidavit shows a genuine issue of material fact exists by setting forth specific facts establishing negligence. *Cf. Shellenbarger v. Brigman*, 101 Wn. App. 339, 346-48, 3 P.3d 211 (2000). Nonetheless, Dr. Chad argues Dr. Li's third affidavit is still insufficient to raise any genuine issue of material fact. Dr. Chad's arguments underscore how, considering Dr. Li's third affidavit, reasonable people may disagree on the facts surrounding respondents' postoperative care in relation to the accepted standard of care. Thus, a genuine issue exists on the facts allegedly constituting negligent postoperative care. These facts are material because they control the litigation's outcome. Viewing all evidence and reasonable inferences in the light most favorable to appellants, a genuine issue of material fact exists on negligent postoperative care. Therefore, the trial court erred in granting respondents' summary judgment motions on negligent postoperative care and, inclusively, negligent referral.

### E. Reconsideration Ruling

The assigned error claims the trial court erred in denying appellants' motion to reconsider the summary judgment order on negligent postoperative care. Appellants contend the trial court should have, for the reasons discussed in the sections above, granted reconsideration on the basis of Dr. Li's third affidavit.

We review a reconsideration ruling for abuse of discretion. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). The trial

court may, upon motion, reconsider its summary judgment order if "there is no evidence or reasonable inference from the evidence to justify . . . the decision, or [the decision] is contrary to law," or "substantial justice has not been done." CR 59(a)(7), (9). Because we have concluded the trial court erred in granting respondents' motion to strike, denying appellants' motion for continuance, and granting respondents' summary judgment motions on negligent postoperative care, it abused its discretion and erred in denying appellants' motion for reconsideration. *See Bank of N.Y. v. Hooper*, 164 Wn. App. 295, 305, 263 P.3d 1263 (2011).

Reversed.

Brown, J.

Brown, J.

I CONCUR:

Fearing, A.C.J.

A.C.J.

Fearing, A.C.J.

25

31128-7-III

KORSMO, J. — (concurring) Although the majority correctly reverses and remands this case because plaintiff's counsel was entitled to more time to prepare his response to the summary judgment motions, I do not concur in the extension of the language from *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998), into appellate court de novo oversight of the trial court's calendar management authority. That subject has traditionally been left to the discretion of the trial court[1] and we should not overturn those types of decisions absent abuse of that discretion. The *Folsom* language only applies to a trial court's summary judgment evidentiary rulings rather than to related matters such as continuances and the consideration of untimely filings.

In addition to being an imprudent policy choice, the elevation of the *Folsom* language fails for several additional reasons. First, as applied to this context, the language is dicta. At issue in *Folsom* was the standard of review of a trial court decision to strike portions of an expert's affidavits due to varied deficiencies. *Id.* at 662-63. The court concluded, unsurprisingly, that the appropriate standard was de novo review of the

---

[1] *E.g., State ex rel. Sperry v. Superior Court for Walla Walla County*, 41 Wn.2d 670, 671, 251 P.2d 164 (1952).

reasons for striking the excised portions of the affidavits. *Id.* at 663. Not only were the trial judge's rulings based on legal grounds, but to leave such rulings to the discretion of the trial court would not ensure that the summary judgment was based on the evidence most favorable to the defending party. *Id.* The trial judge, after all, does not find facts or resolve disputes concerning material facts at summary judgment. Those matters are left for the trial process. The record must be reviewed most favorably to the responding party and that can only be done if all of the admissible evidence can be considered. As that presents a nondiscretionary legal question, the appellate court necessarily applies de novo review.

Unfortunately, *Folsom* stated its resolution of the argument about striking the evidence universally, indicating that de novo review extended to "all trial court rulings made in conjunction with a summary judgment motion." *Id.* The *Folsom* court, of course, was not reviewing *all* potential rulings made in conjunction with a summary judgment motion. It was dealing with a ruling striking evidence. There was no discretionary aspect to that ruling—the trial judge was either right on the law or he was not. Either way, it presented a legal question rather than a discretionary ruling. *Folsom* did not speak to, and should not be read to address, additional types of rulings arising from a summary judgment motion.

A second problem with reading *Folsom* as the majority does is that it necessarily overrules, *sub silentio*, a large number of cases without applying the standards for doing

2

No. 31128-7-III
*Keck v. Collins* - concurring

so articulated in *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 466 P.2d 508

(1970).[2] *E.g., King County Fire Prot. Dist. No. 16 v. Hous. Auth. of King County*, 123

Wn.2d 819, 826, 872 P.2d 516 (1994); *McKee v. Am. Home Prod., Corp.*, 113 Wn.2d

701, 706, 782 P.2d 1045 (1989); *Bernal v. Am. Honda Motor Co., Inc.*, 87 Wn.2d 406,

413, 553 P.2d 107 (1976).[3] Both before and after *Folsom*, the court has continued to treat

a trial court's decision on scheduling summary judgment hearings as a matter left to the

trial court's discretion.[4] *See, e.g., Pitzer v. Union Bank of Cal.*, 141 Wn.2d 539, 556, 9

P.3d 805 (2000); *Tellevik v. 31641 Rutherford St.*, 120 Wn.2d 68, 90, 838 P.2d 111

(1992). The fact that the Supreme Court forgot this statement just two years later when it

decided *Pitzer* suggests that it did not intend *Folsom* to have such a sweeping impact.

The two cases cited by the majority as following *Folsom* do not support that

reading. In *Davies v. Holy Family Hospital*, 144 Wn. App. 483, 183 P.3d 283 (2008),

this court faced issues concerning an expert's qualifications and whether his declarations

of negligence were sufficient to defeat summary judgment. *Id.* at 494. This court cited

the *Folsom* language and conducted an appropriate legal analysis of the issues. *Id.* at

494-96. However, the court then turned to plaintiff's argument that the court had erred in

---

[2] Stare decisis "requires a clear showing that an established rule is incorrect and harmful before it is abandoned." *Stranger Creek*, 77 Wn.2d at 653.

[3] The noted cases do conflict with the *Folsom* statement in that all of them reviewed summary judgment motions to strike under the abuse of discretion standard.

[4] Similarly, the decision to continue a civil or a criminal trial is left to the discretion of the trial court. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

3

denying reconsideration because he was unrepresented, needed more time to file an affidavit from his expert, and deserved the opportunity to file an untimely response. This court ultimately concluded that the trial court had not abused its discretion in these rulings. *Id.* at 498-01. *Davies* strongly suggests that the *Folsom* rule is limited solely to summary judgment evidentiary rulings rather than issues of timeliness, scheduling, and reconsideration.

The other case relied upon by the majority is *Southwick v. Seattle Police Officer John Doe No. 1*, 145 Wn. App. 292, 186 P.3d 1089 (2008). *Southwick* also does not aid the majority's reading of *Folsom*. There the court, in its standard of review section, cited *Folsom* for the proposition that an otherwise discretionary motion to strike is reviewed de novo when "made in conjunction with a motion for summary judgment." *Id.* at 297. However, in its analysis of the trial court's ruling striking an untimely declaration in opposition to summary judgment, the *Southwick* court applied the abuse of discretion standard rather than the *Folsom* de novo legal standard.[5] *Id.* at 301-02.

---

[5] Before and after *Folsom*, this court consistently has applied the abuse of discretion standard to trial court timeliness rulings in summary judgment proceedings. *E.g., Colo. Structures, Inc. v. Blue Mountain Plaza, LLC*, 159 Wn. App. 654, 660, 246 P.3d 835 (2011); *Davies*, 144 Wn. App. at 500; *Garza v. McCain Foods, Inc.*, 124 Wn. App. 908, 917, 103 P.3d 848 (2004); *O'Neill v. Farmers Ins. Co. of Wash.*, 124 Wn. App. 516, 521-22, 125 P.3d 134 (2004); *Idahosa v. King County*, 113 Wn. App. 930, 936-37, 55 P.3d 657 (2002); *Security State Bank v. Burk*, 100 Wn. App. 94, 102-03, 995 P.2d 1272 (2000); *McBride v. Walla Walla County*, 95 Wn. App. 33, 37, 975 P.2d 1029 (1999); *Brown v. Peoples Mortg. Co.*, 48 Wn. App. 554, 559-60, 739 P.2d 1188 (1987).

Since these cases do not support the broad reading of *Folsom*, the majority is left with nothing but the language of that opinion itself. As noted previously, the statement arose in the context of reviewing the legal grounds for the trial court's ruling striking some of the proffered evidence and the court justified its decision on the basis of the need to ensure that all admissible evidence was considered. That rationale has little relation to a court's scheduling authority or local motion practice deadlines.

The Washington Supreme Court recently provided some guidance on what to consider when fashioning an appropriate standard of review:

> An abuse of discretion standard often is appropriate when (1) the trial court is generally in a better position than the appellate court to make a given determination; (2) a determination is fact intensive and involves numerous factors to be weighed on a case-by-case basis; (3) the trial court has more experience making a given type of determination and a greater understanding of the issues involved; (4) the determination is one for which no rule of general applicability could be effectively constructed; and/or (5) there is a strong interest in finality and avoiding appeals.

*State v. Sisouvanh*, 175 Wn.2d 607, 621, 290 P.3d 942 (2012) (citations and quotations omitted).

These factors support reading the *Folsom* language narrowly. Enforceability of local rules and decisions on whether to grant continuances should be left to the discretion of the trial judge who has the most experience with those matters as well as with the counsel involved. An appellate court is seldom in the position where it can legitimately

5

tell a trial court that it erred in enforcing its own local rules. We should review any such challenges for abuse of discretion.

The *Folsom* language will have to be explained and applied by the Washington Supreme Court at some point. However, this court does not have the authority to overturn a Supreme Court and neither should we unnecessarily interpret a case in a manner that puts it in conflict with other cases. The majority reading of *Folsom* puts that case at odds with even more decisions than *Folsom* itself implicitly did. Since I don't think the *Folsom* language should be applied outside of summary judgment evidentiary rulings, I respectfully concur only in the result of the majority opinion.

Korsmo, J.

6